UNITED STATES of America, Appellee,

v.

Larry J. MEEKS, Defendant–Appellant.

No. 1338, Docket 93–1708.

United States Court of Appeals,
Second Circuit.

Argued April 19, 1994.

Decided June 2, 1994.

David V. Kirby, Asst. U.S. Atty., Burlington, VT (Charles R. Tetzlaff, U.S. Atty., D. VT, Paul J. Van de Graaf, Asst. U.S. Atty., Burlington, VT, on the brief), for appellee.

Paul S. Volk, Burlington, VT (Blodgett, Watts & Volk, Burlington, VT, on the brief), for defendant-appellant.

Before: OAKES, KEARSE, and MAHONEY, Circuit Judges.

KEARSE, Circuit Judge:

Defendant Larry J. Meeks appeals from a judgment entered in the United States District Court for the District of Vermont, Franklin S. Billings, Jr., *Judge*, revoking his supervised release pursuant to 18 U.S.C. § 3583 (1988) and sentencing him pursuant to § 3583(g) to a mandatory minimum term

of imprisonment of 12 months, representing one-third the length of his term of supervised release, for possessing a controlled substance while on supervised release. On appeal, Meeks contends that, although his supervised-release violation occurred after enactment of § 3583(g), his original offense conduct occurred before that enactment, and thus the application to him of § 3583(g)'s mandatory minimum violates the *Ex Post Facto* Clause of the Constitution. We agree, and we therefore vacate the judgment and remand for resentencing.

## I. BACKGROUND

The facts underlying this appeal are undisputed. In March 1988, Meeks sold cocaine to an undercover government agent. In April 1989, in connection with that sale, Meeks pleaded guilty to one count of distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1) (1988). In December 1989, Meeks was sentenced to a 13–month term of imprisonment, to be followed by a three-year term of supervised release. One of the express conditions of Meeks's supervised release was that he "not possess illegal controlled substances." (Judgment dated December 4, 1989.)

Following an apparently uneventful period of incarceration, Meeks was released and began to serve his three-year term of supervised release. In July 1993, shortly before his supervised-release term was to expire, Meeks consented to a two-year extension of that term through August 1995.

In September 1993, Meeks's probation officer petitioned the district court to find Meeks in violation of the conditions of his supervised release. At the revocation hearing, the district court concluded that Meeks had violated the conditions of supervised release because it found by a preponderance of the evidence that he had used cocaine, since he had tested positive for that substance on four occasions, *i.e.*, November 14, 1991, December 30, 1991, March 8, 1993, and July 7, 1993. The court also found that Meeks had violated the conditions of his release by submitting monthly supervision reports that failed to indicate his usage of cocaine. Accordingly, the court revoked Meeks's supervised release.

With respect to the punishment to be imposed, the government argued that Meeks was subject to a mandatory minimum term of imprisonment equal to one-third of the term of his supervised release in accordance with 18 U.S.C. § 3583(g), which provides as follows:

> (g) Possession of controlled substances.—If the defendant is found by the court to be in the possession of a controlled substance, the court shall terminate the term of supervised release and require the defendant to serve in prison not less than one-third of the term of supervised release.

This section, passed as part of the Anti–Drug Abuse Act of 1988, Pub.L. No. 100–690, § 7303(b)(2), 102 Stat. 4181, 4464 (1988), became effective on December 31, 1988, *see id.* § 7303(d), 102 Stat. at 4464. Meeks argued that, since § 3583(g)'s mandatory minimum sentencing provision became effective after the date of his underlying distribution offense, its application to him would violate the *Ex Post Facto* Clause of the Constitution.

The district court rejected Meeks's argument, stating "We don't think there is any ex post facto matter here, in view of the fact that we think that the violation of supervised release is a separate and distinct offense from the original offense." (Revocation Hearing at 69.) The court sentenced Meeks in October 1993 to a 12–month prison term, applying § 3583(g)'s mandatory minimum provision. This appeal followed. Meeks is serving his sentence.

## II. DISCUSSION

The Constitution prohibits Congress from passing any "ex post facto Law." U.S. Const. art. I, § 9, cl. 3; *see also id.* art. I, § 10, cl. 1 ("No State shall ... pass any ... ex post facto Law"). The prohibition against *ex post facto* laws embodies two principal concerns. First, it helps to prevent legislative abuses by curbing the "enact[ment of] arbitrary or vindictive legislation." *Miller v. Florida*, 482 U.S. 423, 429, 107 S.Ct. 2446, 2450, 96 L.Ed.2d 351 (1987) ("*Miller*"); *see also Calder v. Bull*, 3 U.S. 386, 389, 1 L.Ed. 648 (3 Dall.1798); *Dobbert v. Florida*, 432 U.S. 282, 293, 97 S.Ct. 2290, 2298, 53 L.Ed.2d

344 (1977); *Landgraf v. USI Film Products,* — U.S. —, — – —, 114 S.Ct. 1483, 1497–98, 128 L.Ed.2d 229 (1994). Second, it helps "to assure that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed." *Weaver v. Graham,* 450 U.S. 24, 28–29, 101 S.Ct. 960, 963–964, 67 L.Ed.2d 17 (1981) (*"Weaver"*); *see also Miller,* 482 U.S. at 430, 107 S.Ct. at 2451.

■■■ The Supreme Court first addressed the *Ex Post Facto* Clause in *Calder v. Bull,* in which Justice Chase set forth the Court's understanding of what fell within the Clause's prohibition:

> 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.

*Calder v. Bull,* 3 U.S. at 390, 1 L.Ed. 648 (emphasis omitted). In *Miller,* the Court articulated a two-pronged test for determining when application of a statute violates the constitutional prohibition. Before a statute may be said to be an *ex post facto* law, "first, the law 'must be retrospective, that is, it must apply to events occurring before its enactment'; and second, 'it must disadvantage the offender affected by it.' " *Miller,* 482 U.S. at 430, 107 S.Ct. at 2451 (quoting *Weaver,* 450 U.S. at 29, 101 S.Ct. at 964). With respect to retrospectivity, "[t]he critical question is whether the law changes the legal consequences of acts completed before its effective date." *Weaver,* 450 U.S. at 31, 101 S.Ct. at 965. The "events" and completed "acts" referred to in *Miller* and *Weaver* are the defendant's underlying crime, whether or not a plea of guilty or conviction with respect to that crime occurred after the effective date of the new law. *See, e.g., Weaver,* 450

U.S. at 30, 101 S.Ct. at 965; *United States v. Parriett,* 974 F.2d 523, 525–26 (4th Cir.1992).

This Court has not heretofore addressed the *ex post facto* implications of applying § 3583(g) to a defendant whose original offense conduct predated the enactment of § 3583(g) but whose violation of the terms of the supervised release occurred after the effective date of that section. In the present case, the government properly concedes that Meeks meets the second prong of the *Miller* test, *i.e.,* that he is disadvantaged by the change in the law. *See generally Miller,* 482 U.S. at 429–35, 107 S.Ct. at 2450–53 (retroactive application of a law that imposes a mandatory minimum sentence in place of a flexible range of punishment disadvantages the defendant); *United States v. Paskow,* 11 F.3d 873, 877 (9th Cir.1993). The only question, therefore, is whether § 3583(g) changes the legal consequences of acts completed before its effective date.

Two lines of cases provide conflicting guidance. The first focuses on statutes that increase the penalties for repeat or habitual offenders. The second focuses on statutes that alter the consequences of violations of parole.

With respect to statutes that increase the penalties for repeat or habitual offenders some of whose convictions predate the effective date of the penalty increase, the Supreme Court has held that such statutes are not *ex post facto* laws, reasoning that they merely increase punishment for the crimes committed after the date of the statute. For example, in *Gryger v. Burke,* 334 U.S. 728, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948), the Supreme Court was presented with an *ex post facto* challenge to a fourth-offender statute that permitted a judge to impose a life term of imprisonment when a defendant was shown to have at least three prior convictions. The Court rejected the constitutional challenge, holding that "[t]he sentence as a fourth offender or habitual criminal is not to be viewed as ... additional penalty for the earlier crimes. It is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one." *Id.* at 732, 68 S.Ct. at 1258.

We followed this approach in *Covington v. Sullivan*, 823 F.2d 37 (2d Cir.1987). Covington had pleaded guilty in state court in 1978 to attempted criminal possession of a weapon in the third degree. In 1980, the New York legislature amended its laws and classified criminal possession of a weapon in the third degree as a violent felony offense. Under the law in effect at that time, repeat violent felony offenders were subject to enhanced penalties. In 1981, Covington committed a homicide, and he eventually pleaded guilty to manslaughter, a violent felony; because of his prior criminal-possession conviction, he was subjected to enhanced penalties. This Court, citing *Gryger v. Burke*, rejected Covington's *ex post facto* challenge and upheld the application of the enhanced penalty provision, noting that "[t]he prior criminal conduct serves to enhance the penalty to be imposed upon any person who commits a new crime after the date of the statute enhancing the penalty." *Covington v. Sullivan*, 823 F.2d at 39. *See also United States v. Panebianco*, 543 F.2d 447, 453 n. 4 (2d Cir.1976) ("As long as the second offense occurs after passage of the punishment-enhancing statute, ... there is no retroactivity problem."), *cert. denied*, 429 U.S. 1103, 97 S.Ct. 1129, 51 L.Ed.2d 553 (1977).

In contrast, statutes that alter the consequences of violations of parole, as applied to prisoners or parolees whose underlying offenses occurred prior to the passage of the statutes, have consistently been held to violate the *Ex Post Facto* Clause because the increased burden on parole operates to enhance the penalty for that underlying offense. The seminal case is *Greenfield v. Scafati*, 277 F.Supp. 644 (D.Mass.1967) (three-judge court) ("*Greenfield*"), *aff'd mem.*, 390 U.S. 713, 88 S.Ct. 1409, 20 L.Ed.2d 250 (1968). In that case, Greenfield was sentenced to 5–7 years in prison for his original crime. At the time of sentencing, Massachusetts law allowed for the accumulation of "good-conduct" credits, by which a defendant was able to advance the date of his release from prison. Although then-existing state law provided for the forfeiture of good-conduct credits for misconduct in prison, no forfeiture was provided for violation of parole. While Greenfield was serving his sentence, prior to being released on parole, Massachusetts amended the relevant statutes to provide for the forfeiture of good-conduct credits for parole violations. Greenfield was eventually paroled, violated his parole, and forfeited his good-conduct credits. He then sued in federal court contending that the application to him of the amended statute violated the *Ex Post Facto* Clause. The three-judge panel agreed. It observed that "'any law which was passed after the commission of the offense for which the party is being tried ... which alters the situation of the accused to his disadvantage[ ] ...' is invalid as *ex post facto*." *Greenfield*, 277 F.Supp. at 645 (quoting *In re Medley*, 134 U.S. 160, 171, 10 S.Ct. 384, 387, 33 L.Ed. 835 (1890) (ellipses in *Greenfield*)). By changing the consequences of the parole violation, Massachusetts had, in the district court's view, changed the terms of the original sentence:

> [t]he difference between no penalty, other than a termination of the parole, and a substantial increase in imprisonment for violation, is far from inconsequential. To effect this by legislation enacted after the offense for which sentence was imposed cannot be constitutionally supported.

*Greenfield*, 277 F.Supp. at 646. The Supreme Court affirmed summarily, 390 U.S. 713, 88 S.Ct. 1409, 20 L.Ed.2d 250, which, of course, constituted an affirmance on the merits, *see, e.g.*, *Hicks v. Miranda*, 422 U.S. 332, 344, 95 S.Ct. 2281, 2289, 45 L.Ed.2d 223 (1975).

The lower courts have consistently followed *Greenfield* and held that a statute that enhances penalties for parole violations operates as an *ex post facto* law when applied to a prisoner or parolee whose original offense predates the statute, even if the parole violation itself did not occur until afterwards. For example, *Fender v. Thompson*, 883 F.2d 303 (4th Cir.1989) ("*Fender*"), involved a Virginia statute that eliminated parole eligibility for prisoners who escaped from prison. The Fourth Circuit noted that "the retrospective application of a statute modifying or revoking parole eligibility would, '[f]or prisoners who committed crimes before [the statute's] enactment ..., substantially alter[ ] the conse-

quences attached to a crime already completed, and therefore change[ ] "the quantum of punishment." ' " *Fender,* 883 F.2d at 306 (quoting *Weaver,* 450 U.S. at 33, 101 S.Ct. at 966 (alterations and ellipses in *Fender*)). The court thus concluded that application of that statute to a prisoner who had committed his underlying offense prior to the enactment of the statute was unconstitutional. *See Fender,* 883 F.2d at 307; *see also Beebe v. Phelps,* 650 F.2d 774, 775–76 (5th Cir. Unit A July 1981) (per curiam) (holding that amended Louisiana statute forfeiting good-time credits of parole violators was an *ex post facto* law when applied to parolees whose underlying offenses preceded date of amendment).

■ We view § 3583(g) as less like the habitual-offender statutes, which simply alter the legal consequences of future criminal conduct, and more like the parole-violation statutes, which alter the legal consequences of the defendant's completed acts. Our view is influenced by several factors, including the similarity between supervised release and parole, the permissibility of punishing supervised-release violations that are not of themselves criminal conduct, and, as to supervised-release violations that do constitute criminal conduct, the absence in revocation hearings of certain fundamental constitutional protections.

First, supervised release is essentially similar to parole. The nature of supervised release, which is normally imposed to follow a term of imprisonment, *see* 18 U.S.C. § 3583(a), is virtually the same as the nature of probation, which may be imposed in lieu of imprisonment, *see* 18 U.S.C. §§ 3561–3566 (1988). *See generally* 18 U.S.C. § 3583(d) (allowing court to impose as a supervised-release condition "any condition set forth as a discretionary condition of probation in section 3563(b)(1) through (b)(10) and (b)(12) through (b)(20)"). Further, the provisions in § 3583 for revocation of supervised release refer to provisions governing revocation of probation, instructing the court to apply "the provisions of the Federal Rules of Criminal Procedure that are applicable to probation revocation and ... the provisions of applicable policy statements issued by the Sentenc-

ing Commission." 18 U.S.C. § 3583(e)(3). *See generally* Fed.R.Crim.P. 32.1 (treating probation and supervised release in the same manner); Federal Sentencing Guidelines ("Guidelines") Chapter Seven, Part A, ¶ 2(b) (generally "the conditions of supervised release authorized by statute are the same as those for a sentence of probation").

Probation, in turn, insofar as constitutional protections against revocation are concerned, has been termed "constitutionally indistinguishable" from parole. *See Gagnon v. Scarpelli,* 411 U.S. 778, 782 n. 3, 93 S.Ct. 1756, 1760 n. 3, 36 L.Ed.2d 656 (1973) ("Despite the undoubted minor differences between probation and parole, the commentators have agreed that revocation of probation where sentence has been imposed previously is constitutionally indistinguishable from the revocation of parole."); *see id.* at 782, 93 S.Ct. at 1760 (no constitutionally relevant difference between parole and probation for the purposes of due process). Thus, we agree with *United States v. Parriett,* in which the Fourth Circuit observed,

[w]e can find no persuasive reason to distinguish between the standards of parole eligibility ... and the conditions for revocation of supervised release.... The former provisions dictate the circumstances upon which an inmate may be released from imprisonment; the latter provisions control when a former inmate may be returned to imprisonment. We find both sets of laws to be equally important in contributing to the severity of a defendant's initial sentence.

974 F.2d at 526 n. 2. *Accord United States v. Paskow,* 11 F.3d at 881 ("Supervised release and parole are virtually identical systems."). We conclude that for purposes of analyzing the applicable constitutional protections, a charge of supervised-release violation is virtually indistinguishable from a charge of violation of parole.

Second, supervised release, like parole, is an integral part of the punishment for the underlying offense.

Under each, a defendant serves a portion of a sentence in prison and a portion under supervision outside prison walls. If a defendant violates the terms of his release,

he may be incarcerated once more under the terms of his original sentence. More specifically, a defendant's original sentence determines the length of the term of parole (indirectly) or supervised release (directly). It is also the original sentence that establishes how long the defendant may be required to serve following revocation in the case of both parole and supervised release violations.

*United States v. Paskow,* 11 F.3d at 881; *see id.* at 883 (supervised release is "simply part of the whole matrix of punishment which arises out of a defendant's original crimes" (internal quotes omitted)); *cf. Shepard v. Taylor,* 556 F.2d 648, 654 (2d Cir.1977) (defendant's eligibility for release on parole is "an integral part of any sentence"). Because § 3583(g) increases the adverse consequences of the violation of conditions that are an integral part of the punishment for the original offense, that section should be viewed as enhancing the sentence for the original offense.

We are unpersuaded by the government's argument that the *Ex Post Facto* Clause is not implicated so long as the penalty for a supervised-release violation is enhanced before the defendant engages in his supervised-release-violative conduct because the violator then has notice and fair warning that that conduct will result in the enhanced penalty. While it is true that a defendant would have notice of that enhancement before he committed his violation of supervised release, it is equally true that he would have had no such notice before he committed the original offense. Indeed, the enhanced punishment of supervised-release revocation simply would not be applicable to him had he not committed his original offense and been sentenced, for that offense, to supervised release. Thus, the government's notice argument is not helpful to resolving the issue presented by this appeal.

Third, supervised release makes the defendant vulnerable to increased punishment in a number of situations in which he would not otherwise be vulnerable. For example, given the variety of supervised-release conditions that may be imposed, *see, e.g.,* 18 U.S.C. §§ 3583(d), 3563(b)(1), (5), and (10) (defendant must support his dependents, work conscientiously at suitable employment, and undergo medical treatment), the conduct that constitutes a supervised-release violation is often not a criminal offense. If the individual may be punished for an action that is not of itself a crime, the rationale must be that the punishment is part of the sanction for the original conduct that was a crime.

Finally, charges of supervised-release violations are not subject to the same constitutional ground-rules as charges of repeat-offender violations. In prosecutions under the latter types of statutes, the conduct that ultimately triggers the application of the habitual offender statutes is treated by the law as a separate criminal offense. For example, as in all other criminal prosecutions, jeopardy attaches. Moreover, the full complement of constitutional protections, including the requirement that the prosecution prove the alleged conduct beyond a reasonable doubt and the defendant's right to counsel, applies. *See, e.g., United States v. Arzate–Nunez,* 18 F.3d 730, 735 (9th Cir.1994). Because the triggering conduct is treated as a separate criminal offense that is completely distinct from the prior offenses, it makes sense to view the enhanced penalties provided by repeat-offender statutes primarily as part of the penalty for the subsequent offense, rather than of the penalty for the completed prior offenses.

■ However, with respect to supervised-release-violative conduct, these fundamental constitutional protections do not apply. For example, because a revocation proceeding is "not a proceeding designed to punish a criminal defendant for violation of a criminal law," *United States v. Hanahan,* 798 F.2d 187, 189 (7th Cir.1986), the defendant may be both punished for the supervised-release violation and prosecuted criminally for the same conduct without implicating principles of double jeopardy, *see id.* ("revocation of parole and a criminal prosecution can lawfully be based on the same transaction without violating the double jeopardy clause"); *United States v. Grisanti,* 4 F.3d 173, 176 (2d Cir.1993) (noting that there is "abundant case law which shows jeopardy does not attach at parole or probation hearings"); *Standlee v. Rhay,* 557

F.2d 1303, 1305, 1307 (9th Cir.1977) (Double Jeopardy Clause does not prevent parole revocation hearing following acquittal in criminal prosecution). *See also* Guidelines Chapter Seven, Part A, ¶ 3(b), (choosing to view supervised-release violations as a "breach of trust," rather than "as if that conduct were being sentenced as new federal criminal conduct," and noting that "the sentence imposed upon revocation would be intended to sanction the violator for failing to abide by the conditions of the court-ordered supervision, leaving the punishment for any new criminal conduct to the court responsible for imposing the sentence for that offense").

▮ Similarly, most of the fundamental constitutional procedural protections that are normally applicable to a criminal prosecution are not required for supervised-release proceedings as a matter of constitutional law. *See generally Gagnon v. Scarpelli,* 411 U.S. at 782, 93 S.Ct. at 1759 ("Probation revocation . . . is not a stage of a criminal prosecution."). For example, the government need prove the alleged supervised-release violation only by a preponderance of the evidence, not beyond a reasonable doubt. *See, e.g.,* 18 U.S.C. § 3583(e)(3). Nor is there any constitutionally guaranteed right to counsel, *see Gagnon v. Scarpelli,* 411 U.S. at 790, 93 S.Ct. at 1763, though there is such a statutory right, *see* 18 U.S.C. §§ 3006A(a)(1)(C), (E) (1988) (providing for appointed counsel in supervised-release and probation-revocation hearings); and there is no right to trial by jury, *see Gagnon v. Scarpelli,* 411 U.S. at 786, 93 S.Ct. at 1761. *See generally United States v. Arzate–Nunez,* 18 F.3d at 735; *United States v. Stephenson,* 928 F.2d 728, 732 (6th Cir.1991) (detailing due process protections in supervised-release revocation hearings). The above constitutional protections have been ruled inapplicable because the conduct that violates the conditions of supervised release is not viewed as a separate criminal offense. Accordingly, any enhancement of the punishment for the supervised-release violation should be viewed primarily as an enhancement of the penalties for the past acts, rather than for the subsequent acts.

In sum, given (a) that supervised release is an integral part of the punishment for the underlying offense and is essentially the same as parole, (b) that a supervised-release violation is punishable whether or not it constitutes criminal conduct, (c) that the violator may be punished both in a supervised-release-violation proceeding and in a separate criminal prosecution without offending principles of double jeopardy, and (d) that a violation of supervised release need not be established beyond a reasonable doubt, or in a trial before a jury, or in a proceeding in which there is a constitutional entitlement to counsel, we are persuaded that any provision for punishment for a violation of supervised release is an increased punishment for the underlying offense. Thus, where the underlying offense was committed prior to the effective date of § 3583(g), application of that section violates the *Ex Post Facto* Clause. *Accord United States v. Parriett,* 974 F.2d at 527; *United States v. Paskow,* 11 F.3d at 876.

We do not view *United States v. Bermudez,* 974 F.2d 12 (2d Cir.1992) (per curiam), on which the government relies, as requiring a contrary result. In *Bermudez,* the defendant had committed the underlying offense before the Guidelines took effect and was sentenced under pre-Guidelines law to a term of imprisonment, to be followed by a term of supervised release. While on supervised release, she violated the conditions of release, which resulted in revocation proceedings. In an appeal from the revocation, this Court determined, on grounds not relevant here, that further proceedings were required; and we stated that, on remand, the district court should resentence Bermudez in accordance with the Guidelines, noting that "[t]he Guidelines apply to all 'offenses' committed after November 1, 1987." *Id.* at 13 (citing the Sentencing Act of 1987, Pub.L. No. 100–182, § 2(a), 101 Stat. 1266 (1987)). Though the opinion went on to state that "a violation of supervised release is, *for this purpose,* a separate 'offense' from the crime that led to the initial imprisonment that, in turn, preceded the supervised release," 974 F.2d at 13–14 (emphasis added), *Bermudez* involved no *ex post facto* challenge whatever. Indeed, Bermudez's counsel had urged that the Guide-

lines, which were not yet in effect at the time of the original offense, be applied. *See* 974 F.2d at 13. Thus, *Bermudez* did not involve the constitutional question of whether an underlying offense and a supervised-release violation are separate offenses for purposes of the *Ex Post Facto* Clause, and the opinion did not purport to touch upon that question. We conclude that *Bermudez*'s characterization of the two as separate for the purpose of the remand at issue in that case has no application to the present case.

### CONCLUSION

We conclude that § 3583(g) as applied to Meeks, whose original offense occurred prior to the effective date of that statute, increases the penalties for that original offense and thus is unconstitutional as an *ex post facto* law. Accordingly, we vacate Meeks's sentence and remand for resentencing in a manner consistent with the law in effect at the time of the commission of his original distribution offense.

The mandate shall issue forthwith.