Walter BORREGO, Petitioner,

v.

UNITED STATES of America, Respondent.

No. 97 Civ. 1486 (MJL).
No. 90 Cr. 370 (MJL).

United States District Court,
S.D. New York.

Aug. 24, 1997.

**521**

Mary Jo White, United States Attorney for the Southern District of New York by Robin W. Morey, Assistant United States Attorney, New York City, for the Government.

Walter Borrego, Bronx, NY, pro se.

## OPINION AND ORDER

LOWE, Senior District Judge.

Before the Court is the motion of petitioner Walter Borrego ("Petitioner"), pursuant to 28 U.S.C. § 2255 ("Section 2255"), to vacate, set aside, or correct his sentence. For the reasons stated below, Petitioner's motion is granted.

## BACKGROUND

In 1990, a federal grand jury indicted Petitioner for engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848(a), several counts of drug trafficking in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1), and several counts of unlawful possession of a firearm in violation of 18 U.S.C. § 924(c). On August 3, 1990, Petitioner pled guilty, pursuant to a cooperation agreement with the Government, to the criminal enterprise count and to one count of firearm possession. On July 13, 1993, the Court sentenced Petitioner to time served, five years supervised release, and a $100 special assessment. As special conditions of the supervised release term, the Court ordered Petitioner to submit to "drug after care" counseling and to discontinue his drug use. Petitioner began his supervised release term on July 13, 1993.

On March 10, 1994, the United States Probation Department filed a violation of supervised release report ("Probation Report"), indicating that Petitioner had (1) repeatedly tested positive for illegal drugs, (2) failed to attend a counseling session, and (3) falsified urine specimens. *See* Prob.Rep. at 1. The Probation Report recommended placing Petitioner into a strict residential program or, if such a program was unacceptable, reincarcerating Petitioner. *See id.* at 2. The Probation Report noted that "[s]hould Borrego be sentenced to imprisonment, supervised release cannot be reimposed." *Id.* at 4 (citing

*United States v. Koehler*, 973 F.2d 132 (2d Cir.1992)).

On October 13, 1995, Judge Kevin Thomas Duffy presided over Petitioner's supervised release revocation hearing. At the hearing, Petitioner pled guilty to illegal drug use. 10/13/95 Tr. at 3–4. Petitioner's counsel, James Roth, urged the Court to sentence Petitioner to 20 months imprisonment and an additional term of supervised release. *Id.* at 4. The Government did not object to counsel's recommendation and suggested a term of three years supervised release. *Id.* at 5. Judge Duffy, relying on 18 U.S.C. § 3583(h) ("Section 3583(h)"), agreed to impose "the sentence suggested: Twenty months ... [and t]he reinstitution of [three years] supervised release." *Id.* at 7–8. No appeal followed.

On February 3, 1997, Petitioner,[1] proceeding *pro se*, filed the instant Section 2255 petition ("Petition"). In his motion, Petitioner asserts that: (1) the imposition of a second supervised release term ("Second Term") under Section 3583(h), which was not in effect at the time of his conviction, violates the Ex Post Facto Clause of the United States Constitution ("Supervised Release Claim"), and (2) counsel's failure to object to or appeal the imposition of the Second Term constitutes ineffective assistance of counsel. *See* Pet'r's Mem. at 3, 6. In response to the Petition, the Government offered no objections and conceded that the Second Term should be vacated. *See* Letter of Robin W. Morey, Esq. to Court, dated Apr. 21, 1997, at 2 ("the application of the § 3583(h) amendment to Petitioner appears to violate the Ex Post Facto Clause.") ("Gov't 4/21/97 Letter"). Neither party, however, addressed the cognizability of the instant petition.[2] Accordingly, the Court ordered the parties to do so by June 26, 1997. *See* Order, dated May 22, 1997, at 2. The Government now contends that Petitioner is not entitled to habeas relief because:

"he has not established cause and prejudice for failing to raise the issue on appeal and [no] miscarriage of justice [will result] because Petitioner received the sentence he bargained for and requested from the Judge." Letter of Robin W. Morey, Esq. to Court, dated June 26, 1997, at 1 ("Gov't 6/26/97 Letter"). Petitioner offers no justification, other than his ineffective assistance of counsel claim, for his procedural default. Petitioner, nonetheless, maintains that he is innocent of the second term of supervised release imposed by the Court. *See* Pet'r's Mot. Requesting Hearing at 2.

## DISCUSSION

### I. *Procedural Bar*

"[F]ailure to raise a constitutional issue on appeal is itself a procedural default, thereby implicating the cause and prejudice test." *Campino v. United States*, 968 F.2d 187, 190 (2d Cir.1992). Cause must be "something external to the petitioner, something that cannot be fairly attributed to him." *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991). "Objective factors that constitute cause include interference by officials that makes compliance with the State's procedural rule impracticable, and a showing that the factual or legal basis for a claim was not reasonably available to counsel." *McCleskey v. Zant*, 499 U.S. 467, 494, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991). The prejudice prong requires that the petitioner show not just that the errors "created a possibility of prejudice, but that they worked to his actual and substantial disadvantage." *United States v. Frady*, 456 U.S. 152, 170, 102 S.Ct. 1584, 1596, 71 L.Ed.2d 816 (1982).

There are two exceptions to the cause and prejudice test. First, where a claim of ineffective assistance of trial counsel is made and a defendant did not retain new counsel

---

1. Petitioner was released from federal custody on March 18, 1997. *See* Pet'r's Mot. Requesting Hearing at 2.

2. In the Second Circuit, unlike other Circuits, the Government's failure to raise the procedural default issue cannot constitute a waiver. *Compare Campino v. United States*, 968 F.2d 187, 190

(2d Cir.1992) *with Gonzalez v. United States*, 33 F.3d 1047, 1049 (9th Cir.1994) (finding that Government's failure to assert procedural default in opposition to Section 2255 motion waived issue); *United States v. Metzger*, 3 F.3d 756, 757–58 (4th Cir.1993) (same); *United States v. Hall*, 843 F.2d 408, 410 (10th Cir.1988) (same).

on direct appeal, the failure to raise the ineffectiveness claim on direct appeal is not a procedural default. *See Billy–Eko v. United States,* 8 F.3d 111, 115 (2d Cir.1993). Second, even if a petitioner cannot demonstrate cause, courts may still consider newly raised claims where "failure to consider the claims will result in a fundamental miscarriage of justice." *Sawyer v. Whitley,* 505 U.S. 333, 339, 112 S.Ct. 2514, 2518–19, 120 L.Ed.2d 269 (1992). A fundamental miscarriage of justice occurs in those "extraordinary circumstances" when a constitutional violation probably has caused the conviction of one who is "actually innocent." *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 2649–50, 91 L.Ed.2d 397 (1986).

### A. *Cause and Prejudice*

■■■■■ Petitioner did not appeal the imposition of the Second Term at the supervised release revocation hearing. Petitioner attributes this failure to his counsel's ineffectiveness. *See* Pet'r's Mem. of Law at 3. The Court finds Petitioner's argument unpersuasive. Petitioner cannot demonstrate "cause" or bypass its requirements based on the effectiveness of counsel, as no "constitutionally guaranteed right to counsel" exists at a supervised release revocation hearing. *See United States v. Meeks,* 25 F.3d 1117, 1123 (2d Cir.1994). It follows that no right to counsel attaches to an appeal of a supervised release revocation hearing. Petitioner, therefore, cannot raise an ineffectiveness claim based on counsel's performance at a proceeding at which he had no guaranteed right to counsel. *See Wainwright v. Torna,* 455 U.S. 586, 587–88, 102 S.Ct. 1300, 1301–02, 71 L.Ed.2d 475 (1982). Because nothing in the record suggests a basis for "cause," aside from the improper allegations of ineffective assistance of counsel, the Court turns to the "actual innocence" exception to determine if it should reach the merits of the Petition.

### B. *Actual Innocence*

The Supreme Court has extended the "actual innocence" exception to the sentencing phase of capital trials. In *Smith v. Murray,* 477 U.S. 527, 529, 106 S.Ct. 2661, 2663–64, 91 L.Ed.2d 434 (1986), a capital defendant's statements to a psychiatrist about his prior deviate sexual behavior were admitted to the jury during the sentencing phase of his state trial. Although the defendant failed to challenge the admissibility of the statements in his direct state appeal, he raised the issue in subsequent, unsuccessful state and federal habeas petitions. *Id.* The Court held that the failure of defense counsel to raise the admissibility issue, either at trial or on appeal, did not constitute "cause" for the state procedural default. *Id.* at 534, 106 S.Ct. at 2666.

The Court then turned to the defendant's claim that he was "actually innocent" of the capital sentence, as opposed to the underlying crime. *Id.* at 537, 106 S.Ct. at 2667–68. Although recognizing that the "actual innocence" exception did not translate easily into the sentencing phase of a capital trial, the Court nevertheless applied the innocence exception to the defendant's capital sentence. *Id.* at 538, 106 S.Ct. at 2668. Because nothing in the record suggested that the psychiatrist's testimony was false or misleading, the Court found that the admission of his testimony did not "pervert the jury's deliberations concerning the ultimate question whether in fact petitioner constituted a continuing threat to society." *Id.* In other words, the Court found that "the alleged constitutional error neither precluded the development of true facts nor resulted in the admission of false ones." *Id.* Accordingly, the Court held that the defendant was not "actually innocent" of his capital sentence, and thus admission of the psychiatrist's testimony did not represent a "fundamental miscarriage of justice." *Id.*

The Court, in *Sawyer v. Whitley,* 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992), further elaborated upon the "actual innocence" standard in a capital sentencing case. In *Sawyer,* a capital defendant convicted of murder and rape sought habeas relief to challenge the withholding of several pieces of evidence from the jury during the sentencing phase of his trial. *Id.* at 347, 112 S.Ct. at 2523. In determining whether to apply the "actual innocence" exception to the sentencing phase of defendant's trial, the Court emphasized that the "miscarriage of justice ex-

ception is concerned with actual as compared with legal innocence." *Id.* at 339, 112 S.Ct. at 2519.[3] The Court explained that the "innocence exception is narrow," focusing on "objective factors." *Id.* at 339, 347, 112 S.Ct. at 2518–19, 2523.

As in *Smith,* the defendant claimed to be "actually innocent" of his sentence rather than the crime itself. Addressing the meaning of "actual innocence," the Court characterized the "prototypical" example as the case where "the State has convicted the wrong person of the crime." *Id.* at 340, 112 S.Ct. at 2519. The Court, noting the difficulty in applying this concept to the sentencing phase, interpreted "actual innocence" for a capital sentencing claim to mean "innocen[ce] of death." *Id.* The Court held that the "actual innocence" requirement must focus on those elements that render a defendant "eligible" for the death penalty. *Id.* at 347, 112 S.Ct. at 2523. The Court concluded that, to illustrate such innocence, a petitioner must show "by clear and convincing evidence that but for constitutional error at this sentencing hearing, no reasonable juror would have found him eligible for the death penalty." *Id.* at 348, 112 S.Ct. at 2523. The Court unanimously found the "actual innocence" exception inapplicable because the evidence allegedly kept from the jury did not relate to the aggravating factors that made petitioner "eligible" for the death penalty. *Id.*

Although the Supreme Court has not addressed "actual innocence" in the context of a non-capital sentence, the extension of the exception in such a case finds support in *Smith v. Murray,* 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986). In applying the "actual innocence" exception to a capital sentencing proceeding, the Supreme Court stated that procedural default principles do not depend on the nature of the penalty imposed. *Smith,* 477 U.S. at 538, 106 S.Ct. at 2668. The Court also noted that it is fair to enforce procedural default rules in a case lacking a "substantial claim that the alleged error undermined the accuracy of the guilt or *sentencing determination.*" *Id.* at 539, 106 S.Ct. at 2668 (emphasis added); *see also Engle v. Isaac,* 456 U.S. 107, 135, 102 S.Ct. 1558, 1575–76, 71 L.Ed.2d 783 (1982) (actual innocence exception is directed toward "the imperative of [correcting] a fundamentally unjust incarceration").[4] In addition, the Supreme Court consistently has held that the death penalty does not mandate a higher standard of review on federal habeas corpus appeal. *Herrera v. Collins,* 506 U.S. 390, 405, 113 S.Ct. 853, 863, 122 L.Ed.2d 203 (1993). Thus, it follows that the Court overcame the barrier to extending the "actual innocence" standard of review to non-capital sentences when it extended the exception to capital sentences because capital and non-capital cases are treated alike on federal habeas review. *See United States v. Maybeck,* 23 F.3d 888, 893 (4th Cir.1994).[5]

3. The Supreme Court did not define the distinction between actual and legal innocence in this context, nor have the subsequent circuit cases done so in clear fashion. The Court will attempt to illustrate defining examples of this distinction. For example, a claim of strict legal innocence occurs when a defendant claims that a law or statute is unconstitutional in its application to all persons. Thus, were a defendant to argue he was innocent of his sentence because the Sentencing Guidelines were promulgated unconstitutionally, that would be a claim of "legal innocence" as it pertains to all persons. In such a case, the defendant is not claiming to be actually innocent of the underlying crime or sentence. Thus, the facts surrounding that witness' arrest, conviction, trial, or sentencing bear no relevance to the claim. On the other hand, a claim of actual innocence arises when a defendant claims that a law was applied unconstitutionally to him. Such a claim does not suggest that the law itself is unconstitutional (*i.e.,* legal innocence), but

merely that it was applied unconstitutionally under the particular circumstances of the case.

4. *Sawyer* cited *Engle* and *Smith* favorably. *See* 505 U.S. at 339–41, 112 S.Ct. at 2518–20.

5. The majority in *Sawyer* also commented that, "[i]n the context of a noncapital case, the concept of 'actual innocence' is easy to grasp," 505 U.S. at 341, 112 S.Ct. at 2520, and gave the example of another person confessing to the crime. *Id.* The Eighth Circuit noted that this passage may "suggest[] that there may be no exception for procedurally barred noncapital sentencing claims, unless one is innocent of the crime." *Waring v. Delo,* 7 F.3d 753, 757 (8th Cir.1993). This Court disagrees. The confession by another person to a crime relates to a defendant's innocence of the underlying crime, and is therefore irrelevant to the sentencing phase. Whether or not the sentence is capital or noncapital, the concept of "actual innocence" of the

The application of the "actual innocence" exception to a non-capital sentence also appears to be in accord with at least three courts of appeal. *See id.* ("We see little difference between holding that a defendant can be innocent of the acts required to enhance a sentence in a death case and applying a parallel rationale in non-capital cases."); *Mills v. Jordan,* 979 F.2d 1273, 1277 (7th Cir.1992) (applying "actual innocence" exception to sentencing phase of non-capital case because petitioner claimed he was innocent of fact necessary to sentence him as habitual offender); *Jones v. Arkansas,* 929 F.2d 375, 380–81 (8th Cir.1991) (finding "actual innocence" exception applicable to Ex Post Facto violation in sentencing phase of non-capital case because it was "difficult to think of one who is more innocent of a sentence than a defendant sentenced under a statute that by its very terms does not even apply to the defendant."); *Pilchak v. Camper,* 935 F.2d 145, 148 (8th Cir.1991) (applying "actual innocence" exception to sentencing phase of non-capital case because petitioner "was not the proper subject" for life sentence); *see also Selsor v. Kaiser,* 22 F.3d 1029, 1036 (10th Cir.1994) (acknowledging that "actual innocence" exception applies to sentencing phase of non-capital case where plaintiff proves his innocence of prior conviction used to sentence him as habitual offender); *Smith v. Collins,* 977 F.2d 951, 958 (5th Cir.1993) ("assuming, without deciding, that the actual innocence exception can extend, in the abstract, to non-capital sentencing procedures"); *Dean v. United States,* 788 F.Supp. 306, 312 (E.D.Tex.1992) (finding defendant actually innocent of unauthorized, concurrent sentences under Double Jeopardy Clause); *cf. Waring v. Delo,* 7 F.3d 753, 757 (8th Cir.1993) (cautioning that "actual innocence exception in a non-capital sentencing case must be defined by a narrow, objective standard"). *But see United States v. Richards,* 5 F.3d 1369, 1371 (10th Cir.1993) ("A person cannot be actually innocent of a non-capital sentence")[6]; *see also Higgins v.*

*Smith,* 991 F.2d 440, 441 (8th Cir.1993) (questioning whether, after *Sawyer, Jones* is still good law in the context of non-capital case).

In view of the Supreme Court's decision in *Smith* and the application of *Sawyer* in the federal courts, this Court finds that the "actual innocence" exception is properly extended to the narrow group of non-capital cases where petitioner: (1) alleges and proves that a constitutional violation resulted in the sentence, *see Smith v. Collins,* 977 F.2d 951, 959 (5th Cir.1993); (2) demonstrates that he is innocent of the facts necessary to impose his sentence by clear and convincing evidence, *see Sawyer,* 505 U .S. at 348, 112 S.Ct. at 2523–24; and (3) proves that the sentence received exceeded the maximum permitted under the applicable statute, *see Smith,* 977 F.2d at 959. Thus, to qualify for the "actual innocence" exception, a petitioner must prove that "but for the constitutional error, [petitioner] would not have been legally eligible for the sentence received." *Id.*

## II. *Petitioner's Motion for Habeas Relief*

Petitioner argues that it would be a "miscarriage of justice to subject him to the liberty restraints of supervised release where the law does not allow for a second term of supervised release." Pet'r's Mot. Requesting Hearing at 2. In response, the Government does not address Petitioner's claim of "actual innocence" of his sentence, but merely contends that Petitioner cannot assert that the Second Term results in a "miscarriage of justice" because he "received the sentence he bargained for and **specifically requested.**" Gov't 6/27/97 Letter at 4. The Court finds the Government's argument unpersuasive.

### A. *Ex Post Facto Violation*

As the Government admits, Petitioner has proven that a violation of the Ex Post Facto Clause resulted in his sentence to a second supervised release term. *See* Gov't 4/21/97

---

guilt phase remains the same. Thus, a more logical reading of this passage would be that "actual innocence" at the guilt stage of any case is easier to grasp than at the sentencing phase (particularly in a capital case), regardless of the sentence imposed.

**6.** The Tenth Circuit in *Selsor* never addresses the apparent conflict between its holding in that case and its previous holding in *Richards.*

Letter at 2. The supervised release statute in effect at the time Petitioner committed his crime was 18 U.S.C. § 3583(e)(3) ("Section 3583(e)(3)"). Section 3583(e)(3) provided that a court could "revoke a term of supervised release, and require the person to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post release supervision." 18 U.S.C. § 3583(e)(3). In *United States v. Koehler*, 973 F.2d 132, 134–36 (2d Cir.1992), the Second Circuit joined the majority of courts in holding that Section 3583(e)(3) did not authorize a district court to reimpose a term of supervised release after revoking the original term and imposing a term of reimprisonment.

In 1994, Congress amended Section 3583 to allow for the reimposition of successive terms of supervised release. *See* 18 U.S.C. § 3583(h). Pursuant to this new law, Judge Duffy imposed a second term of supervised release following Petitioner's twenty-month prison term. The question before the Court is whether the Second Term was constitutional in view of the fact that Petitioner's original offense took place prior to Section 3583(h)'s enactment.

■ Article I of the Constitution provides that neither Congress nor any State shall pass any "ex post facto Law." *See* U.S. Const. art. I, § 9, cl. 3. The Ex Post Facto Clause prohibits the enactment of any law that "imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *DiNapoli v. Northeast Regional Parole Commission*, 764 F.2d 143, 145 (2d Cir.1985). In order for a penal law to be deemed ex post facto, "it must be retrospective, that is, it must apply to events occurring before its enactment," *and* it "must disadvantage the offender affected by it." *United States v. Meeks*, 25 F.3d 1117, 1119 (2d Cir.1994).

■ The Government properly concedes that Petitioner meets the first prong of this test (*i.e.,* that the application of Section 3583(h) in Petitioner's case changes the legal consequences of acts completed before its

effective date). *See* Gov't 4/21/97 Letter at 1–2. The Second Circuit has held that "any provision for punishment for a violation of supervised release is an increased punishment for the underlying offense." *Meeks,* 25 F.3d at 1123. Because additional punishment for a supervised release violation is viewed as punishment for the original offense, the statute in effect at the time of the original offense governs the sentencing determination at a revocation hearing. *Id.* Thus, where, as here, the underlying offense was committed prior to the effective date of Section 3583(h), application of that section violates the Ex Post Facto Clause. *Cf. id.* at 1124 (finding district court's application of mandatory minimum sentence under Section 3583(g) upon revocation of supervised release violative of Ex Post Facto Clause because defendant committed underlying offense before enactment of statute).

The Government also admits that Petitioner satisfies the second prong of this test (*i.e.,* that he is disadvantaged by the application of the new law). The Court agrees. Section 3583(e)(3) provides that the maximum sentence that may be imposed upon the revocation of supervised release for a Class A felony is five years. 18 U.S.C. § 3583(e)(3). With the application of Section 3583(h), Petitioner "could end up facing a period of incarceration and supervised release in excess of the five year limit set out in § 3583(e)(3) that he faced at the time of his revocation sentencing should he be found in violation of this new period of supervised release." Gov't 4/21/97 Letter at 2. The Government provides an apt example of the disadvantage that Petitioner might face as a result of the Second Term:

[I]f [Petitioner] is again in violation of his supervised release after a period of 12 months [one year], this Court could then sentence [him] to a period of imprisonment of 40 months, the original 60 month [five year] limit, minus the 20 months he has already served. In that event the total mix of imprisonment and supervised release he will have served for the original violation of supervised release is a total of 72 months [six years], 12 months [one year] in excess of the limit set out in

§ 3583(e)(3). In contrast to this, absent the § 3583(h) amendment, under *Koehler*, the maximum sentence would have been the 60 months [five years].

*Id.* Because the retroactive application of Section 3583(h) imposed a potentially greater punishment than that available at the time Petitioner committed his crime, Petitioner's sentence to Second Term under that statute violates the Ex Post Facto Clause. *See United States v. Beals*, 87 F.3d 854, 859–60 (7th Cir.1996) (finding district court's application of Section 3583(h) at supervised release revocation hearing in violation of Ex Post Facto Clause because it imposed "potentially greater punishment" than that available at time defendant committed his crime); *United States v. Concepcion*, No. 89 Cr. 185–05, 1997 WL 89114, at *2 n. 1 (E.D.Pa. Feb.27, 1997) (same).[7]

### B. *Actual Innocence*

 In view of the conceded Ex Post Facto violation, Petitioner has amply shown that a "constitutional violation resulted in his sentence." *See Smith*, 977 F.2d at 959. Petitioner also has demonstrated that he is "innocent" of facts necessary to impose his sentence by clear and convincing evidence. *See Sawyer*, 505 U .S. at 348, 112 S.Ct. at 2523–24. Petitioner committed his crimes in 1990, four years before the enactment of Section 3583(h). Thus, viewed under the necessary "objective" factors, Petitioner has shown his factual innocence of the sentence. Moreover, the imposition of the Second Term exceeded the maximum available penalty for his crime. Thus, Petitioner has illustrated that "but for" the Ex Post Facto violation he would not have been "eligible" for a second term of supervised release.

The Court concludes that the Petition falls within the "actual innocence" exception to the procedural default rule. The Court finds it "difficult to think of one who is more 'innocent' of a sentence than a defendant sentenced under a statute that by its very terms does not even apply to the defendant." *Jones*, 929 F.2d at 381. Accordingly, the Court grants the Petition and vacates Petitioner's sentence to a second term of supervised release.

### CONCLUSION

The Court hereby grants Petitioner's request, pursuant to Section 2255, for habeas corpus relief and vacates his sentence for a second term of supervised release.

It is So Ordered.

---

**7.** In *United States v. St. John*, 92 F.3d 761, 767 (8th Cir.1996), the Eighth Circuit rejected an Ex Post Facto challenge to a second supervised release term because "the new law [Section 3583(h)] and our interpretation of the prior law [Section 3583(e)(3)] have the same effect." The *St. John* court explained that "[t]he availability of a new term of supervised release under the prior law in this circuit (but not in other circuits) explains why the Seventh Circuit reached the contrary conclusion ... in *Beals*." *St. John* is inapplicable because the Second Circuit, like the Seventh Circuit in *Beals*, held that Section 3583(e) did not permit an additional term of supervised release after revocation of the original term and reimprisonment.