**Charles COWAN, Petitioner,**

v.

**Christopher ARTUZ, Superintendent, Green Haven Correctional Facility, Respondent.**

**No. 99 Civ. 9730(WCC).**

United States District Court, S.D. New York.

May 5, 2000.

Charles Cowan, Stormville, NY, petitioner pro se.

Francis D. Phillips, II, District Attorney of Orange County, Goshen, NY, for defendant, Andrew R. Kass, Asst. District Attorney, of counsel.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Petitioner pro se Charles Cowan, an inmate at Green Haven Correctional Facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 *et seq.* Petitioner seeks to collaterally attack a judgment of the Supreme Court of Orange County, which followed a jury trial. Petitioner claims that he was denied effective assistance of both trial and appellate counsel; that he was prejudiced by the People's failure to turn over a toxicology report on the deceased; and that he was denied due process and his right to a fair trial. For the reasons that follow, the petition is dismissed.

## BACKGROUND

On November 28, 1995, an Orange County, New York jury found petitioner guilty of Murder in the Second Degree; Robbery in the First Degree; Robbery in the Second Degree; Assault in the Second Degree; Criminal Possession of a Weapon in the Fourth Degree; Petit Larceny; and Criminal Possession of Stolen Property in the Fifth Degree. The convictions stem from the death of Robert Jewell on March 20, 1995.

### A. *Evidence Adduced at Trial*

Evidence was presented at trial which showed the following: In March 1995, Jewell was living in a trailer in New Windsor, New York which belonged to petitioner's family. Petitioner had once lived in the trailer himself but, at the time of the incident, he was living in a motel. The night of March 19, 1995, petitioner was smoking crack cocaine with friends. The next morning, petitioner walked to the trailer and used a medical benefits card to

pick the lock. He ate something and waited inside for Jewell to return to the trailer from work.

About 1 p.m., Jewell returned to the trailer. As Jewell entered the trailer, petitioner hit him over the head with a rolling pin he had taken from the kitchen. Jewell fell out of the trailer onto the front porch. Petitioner forced Jewell back into the trailer where the two men argued. Jewell was bleeding from the head and petitioner allowed him to get a wash cloth from the bathroom.

Petitioner then taped Jewell's mouth, feet and hands and removed his wallet, took $150 or $160 from it, and took the keys to Jewell's vehicle. Petitioner left the house and, on his way out, took the portable phone and placed it under the trailer. Petitioner then got in Jewell's car, drove to Newburgh, New York where he bought more crack cocaine, and went to a reservoir where he smoked the crack. He checked into a motel, then later took a taxi into Newburgh, again purchased crack, and went back to the motel where he spent the night.

During the afternoon before, at the Bruckner Waste Oil Company next door to the trailer, Clint Bruckner was looking out a window when he saw Robert Jewell's car leave the driveway of the trailer at a high rate of speed. About five minutes later, Jewell approached, looking excited and ashen and walking quickly. Jewell used Bruckner's phone to make a 911 call for the police. Jewell had a bump on his head and a bleeding gash behind one ear.

The police arrived and questioned Jewell, who recounted being attacked by petitioner. During the course of the questioning, the police called for an ambulance, and paramedics arrived before the interview ended. As Jewell was finishing his account, he slumped forward. When Jewell failed to respond to the efforts of the paramedics to resuscitate him, he was taken to a hospital, where he was pronounced dead at 2:02 p.m. An autopsy revealed that Jewell had a hemorrhage on the left side of his head and an enlarged heart that showed signs of a previous heart attack and a fresh heart attack. His coronary arteries were severely narrowed, limiting the blood supply to his heart. Jewell's lungs showed signs of emphysema and edema, or fluid in the lungs. Jewell's blood and urine tested negative for drugs and alcohol. The medical examiner Dr. Louis Roh testified that Jewell's death resulted from a heart attack possibly caused by stress from being struck on the head and bound.

## B. *Procedural History of the Case*

On January 3, 1996, Orange County Court Judge Thomas J. Byrne sentenced petitioner to twenty-three years to life in state prison. Petitioner appealed his conviction to the New York Appellate Division, Second Department. In his appellate brief, petitioner argued that: (1) the People failed to show a sufficient nexus between petitioner's acts and the victim's death; (2) the trial court should not have admitted into evidence a tape recording of Jewell's 911 call to police; (3) the People failed to prove all of the elements of robbery; (4) the verdict of guilt went against the weight of the evidence; and (5) the sentence was excessive under the circumstances.

The Appellate Division affirmed petitioner's conviction and sentence in a Decision and Order dated November 30, 1998. *People v. Cowan*, 255 A.D.2d 596, 682 N.Y.S.2d 59 (2d Dep't 1998). The Appellate Division found that petitioner had not preserved for appellate review his contention that admission of the tape of the 911 call was improper, but noted that the tape was, in any event, admissible "because the victim was still under the excitement precipitated by the event and lacked the reflective capacity essential for fabrication." *Id.* The court also held that in light of petitioner's oral and written confessions and "undisputed medical testimony establishing a causal link between the defendant's acts and the victim's fatal heart

attack approximately one hour after the crime occurred," the evidence was legally sufficient to support a finding of guilt beyond a reasonable doubt. *Id.* The court further held that petitioner's sentence was not excessive and found the rest of petitioner's contentions to be without merit. *Id.*

On January 5, 1999, petitioner, through counsel, applied to the New York Court of Appeals for leave to appeal the Appellate Division's decision on the five issues set forth above. The letter to the Chief Justice stated as follows:

> I have enclosed for your review Appellant's brief, Respondent's brief and the decision and order of the Appellate Division Second Department and ask the following:
>
> 1. That the Court consider issues one through five inclusive of the Appellant's brief and permit the filing of briefs thereto.

(Letter from John P. Savoca to Chief Justice of the New York Court of Appeals of 1/5/99.)

On March 17, 1999, the Court of Appeals denied petitioner leave to appeal. In a petition dated August 16, 1999, petitioner asked this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## DISCUSSION

### I. *The Exhaustion Doctrine*

■ As a threshold issue, respondent claims that petitioner has failed to exhaust his remedies. Before a federal court can grant a state prisoner habeas relief, the prisoner generally must exhaust his remedies in state court.[1] *O'Sullivan v. Boerckel,* 526 U.S. 838, 842, 119 S.Ct. 1728, 1731, 144 L.Ed.2d 1 (1999). The exhaustion doctrine is the product of the rule of comity between federal and state courts. Thus, "when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief." 526 U.S. at 844, 119 S.Ct. at 1732. The Supreme Court has held that state prisoners must give the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." 526 U.S. at 845, 119 S.Ct. at 1732.

■ The exhaustion doctrine is not satisfied unless the federal claim has been "fairly presented" to the state courts. *Daye v. Attorney General of the State of New York,* 696 F.2d 186, 191 (2d Cir.1982). The state prisoner must have informed the state court of both the factual and legal premises of his federal court claim. *Id.* He must have set forth in state court all of the essential factual allegations and essentially the same legal doctrine asserted in his federal petition. *Id.* at 192.

■ In deciding whether the legal doctrines asserted in the state and federal courts are essentially the same, the defendant need not have cited "book and verse on the federal constitution." *Picard v. Connor,* 404 U.S. 270, 278, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971) (internal cita-

---

1. The federal habeas corpus statute, 28 U.S.C. §§ 2254(b) and (c), states:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
(A) the applicant has exhausted the remedies available in the courts of the State; or
(B)(i) there is an absence of available State corrective process; or
(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
(b)(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

tion and quotations omitted). Rather, "in state court the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." *Daye*, 696 F.2d at 192. The Second Circuit has stated that the state courts could have been alerted to the constitutional nature of a claim, even in the absence of a citation to the constitution itself, where the prisoner: (1) relied on federal constitutional precedents; (2) cited state precedent that employs pertinent constitutional analysis; (3) claimed deprivation of a particular right specifically protected by the Constitution; or (4) alleged a pattern of facts that is well within the mainstream of constitutional litigation. *Id.* at 192–94. Furthermore, even if not alerted to the federal claim by the defendant, the state court might have been alerted by the briefs filed by the state in opposition. *Id.* at 193 n. 5.

Respondent argues that petitioner failed to raise on direct appeal or by post-judgment motion the issues of effectiveness of trial and appellate counsel and the People's alleged failure to turn over a toxicology report. Respondent further argues that while petitioner challenged the legal sufficiency of the People's proof in the Appellate Division, his application for leave to appeal to the Court of Appeals was deficient for the purposes of preserving the claim for this Court's review. We will address each of these arguments in turn as we assess petitioner's grounds for habeas corpus relief.

## II. *Petitioner's Grounds for Relief*

### A. *Ineffective Assistance of Trial Counsel and the Alleged Brady Violation*

█ Petitioner failed to raise on direct appeal his claims that he was denied effec-

tive assistance of trial counsel and denied access to potentially exculpatory material in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). New York has a mechanism for collaterally attacking a judgment that is in violation of a defendant's constitutional rights. *See* N.Y.Crim.Proc.Law § 440.10(1)(h) ("At any time after the entry of a judgment, the court in which it was entered may, upon motion of the defendant, vacate such judgment upon the ground that: ... [t]he judgment was obtained in violation of a right of the defendant under the constitution of this state or of the United States."). However, any attempt to bring such a motion would be futile, as section 440.10(2)(c) bars collateral review if the defendant unjustifiably failed to argue such constitutional violation on direct appeal despite a sufficient record.[2] *Bond v. Walker*, 68 F.Supp.2d 287, 295 (S.D.N.Y.1999); *Grey v. Hoke*, 933 F.2d 117, 120–21 (2d Cir.1991); *Bossett v. Walker*, 41 F.3d 825, 828–29 (2d Cir.1994), *cert. denied*, 514 U.S. 1054, 115 S.Ct. 1436, 131 L.Ed.2d 316 (1995). Petitioner is also precluded from bringing these claims on direct appeal. *See* N.Y.Ct.Rules § 500.10(a) (only one application for leave to appeal to the New York Court of Appeals is permitted); *see also Lugo v. Kuhlmann*, 68 F.Supp.2d 347, 363 (S.D.N.Y.1999) (finding that petitioner had procedurally defaulted his claims where petitioner could have raised the claims on direct appeal, but failed to do so). Therefore, petitioner has no further recourse in the state courts and these claims are "deemed exhausted" by virtue of petitioner's procedural default.

Petitioner may not litigate the merits of these claims in a federal habeas proceed-

---

**2.** N.Y.Crim.Proc.Law § 440.10(2)(c) states, in relevant part:

· 2. Notwithstanding the provisions of subdivision one, the court must deny a motion to vacate a judgment when:

. . .

(c) Although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal

from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him.... N.Y.Crim.Proc.Law § 440.10(2)(c).

ing unless he can show cause for the default and prejudice resulting therefrom, *Grey,* 933 F.2d at 121; *Bossett,* 41 F.3d at 829, or "demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice, i.e., a showing of actual innocence," *Howard v. Lacy,* 58 F.Supp.2d 157, 165 (S.D.N.Y.1999) (internal citations and quotations omitted). Petitioner has made no showing of cause or prejudice or actual innocence. Accordingly, petitioner's claims of a *Brady* violation and ineffective assistance of trial counsel must be dismissed without reaching the merits.

## B. *Ineffective Assistance of Appellate Counsel*

■ Petitioner claims that he was denied effective assistance of appellate counsel. Petitioner has not raised this issue in state court, and he is not foreclosed from doing so.

The New York Court of Appeals has held that "a common-law coram nobis proceeding brought in the proper appellate court is the only available and appropriate procedure and forum to review a claim of ineffective assistance of appellate counsel." *People v. Bachert,* 69 N.Y.2d 593, 516 N.Y.S.2d 623, 509 N.E.2d 318, 319 (1987); *see also Harris v. Artuz,* No. 99 Civ. 5019(SAS), 2000 WL 358377, at *3 (S.D.N.Y. April 7, 2000). There is no time limit for applying for a writ of error coram nobis. *Id.* Accordingly, petitioner's claim for ineffective assistance of appellate counsel is not exhausted.

Apropos to petitioner's due process claim, respondent argues that if this Court finds that the petition contains exhausted and unexhausted claims, the petition must be dismissed. In *Rose v. Lundy,* 455 U.S. 509, 510, 102 S.Ct. 1198, 1199, 71 L.Ed.2d 379 (1982), the Supreme Court held that such "mixed" petitions must be dismissed. However, pursuant to the 1996 amendments to the habeas corpus statute, courts now are expressly permitted to deny applications for writs of habeas corpus on the merits, notwithstanding a petitioner's failure to exhaust state remedies. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *Loving v. O'Keefe,* 960 F.Supp. 46, 49 (S.D.N.Y.1997). Accordingly, this Court will address petitioner's claim of ineffective assistance of appellate counsel on the merits.

The Supreme Court set forth the standard for assessing attorney assistance in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). There, the Court held that a defendant must show: (1) "that counsel's performance was deficient .... that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) "that the deficient performance prejudiced the defense .... that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." 466 U.S. at 687, 104 S.Ct. at 2064. Furthermore, the Court held that "[j]udicial scrutiny of counsel's performance must be highly deferential." 466 U.S. at 689, 104 S.Ct. at 2065. Thus, in assessing counsel's performance, a court:

> must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular

case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

466 U.S. at 690, 104 S.Ct. at 2066.

■ The Supreme Court recognized that a defendant is entitled to effective assistance of counsel on first appeal as of right in *Evitts v. Lucey*, 469 U.S. 387, 396, 105 S.Ct. 830, 836, 83 L.Ed.2d 821 (1985). Although the *Strickland* test was formulated in the context of evaluating the effectiveness of trial counsel, the test also applies to appellate counsel. *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir.1994). A habeas petitioner may demonstrate ineffective assistance of appellate counsel if he can show that counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Id.*

Petitioner claims that he was denied effective assistance of counsel on direct appeal because counsel "file[d] an appeal on an incomplete record, leaving out, as admitted, the portion most critical to the case, that of the Medical Examiner who testified as to the cause of death. Here, the main issue in this case was what caused the death of the deceased as defendant was charged with intentional murder. Likewise, he failed to obtain the complete record, thus defendant was denied a meaningful and proper appeal." (Habeas Pet. at 5.)

■ We have reviewed the trial court record and find petitioner's claim of ineffective assistance of appellate counsel to be without merit. As discussed above, petitioner must demonstrate both deficient performance and prejudice. To demonstrate deficient performance, petitioner must show that counsel's performance was "objectively unreasonable under profes-

sional standards prevailing at the time." *Grady v. Artuz*, 931 F.Supp. 1048, 1061 (S.D.N.Y.1996). Here, appellate counsel brought five issues before the Appellate Division, set forth in a thirty-two page brief that extensively cited the trial record. Petitioner does not point to any argument counsel omitted; rather, petitioner appears to claim only that counsel failed to file a complete record on appeal and failed to consider the full testimony of the medical examiner.

However, we need not decide whether counsel's performance was deficient, as petitioner has failed to make a showing of prejudice. The Supreme Court has stated that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

■ Respondent states in its memorandum of law in opposition to the petition that appellate counsel initially omitted portions of the trial transcript from the record. However, according to respondent, "[i]n the course of the preparation of respondent's brief, members of the District Attorney's Office discovered that Dr. Louis Roh's direct testimony was missing from the trial transcripts. The fact of the missing transcripts was promptly reported to the Appellate Division, which in turn directed counsel to obtain those transcripts." (Resp.Mem. at 19–20.)

Petitioner's appellate brief highlighted testimony from both the medical examiner and a cardiologist in support of petitioner's contention that "[t]he People failed to show a sufficient nexus connecting the acts of this defendant to the death of the victim in this case." [3] (Pet'r App.Br. at 6.) In the appellate brief, there is an extensive review of trial testimony by Dr. Anthony

---

**3.** Petitioner was convicted of felony murder. *See* N.Y.Penal Law § 125.25(3) (A Person is guilty of murder in the second degree when: ... he commits or attempts to commit rob-

bery ... and in the course of and in furtherance of such crime or of immediate flight therefrom, he ... causes the death of a person other than one of the participants.).

Pucillo, a cardiologist, regarding the victim's history of heart disease and his opinion that cigarette smoking and job stress could have triggered a heart attack in a person with the level of heart disease exhibited by the victim. (*Id.* at 7–8.) Appellate counsel also outlined Dr. Pucillo's opinion on the impact cocaine use could have had on an individual with advanced heart disease such as the victim, and pointed to trial testimony that the victim drank alcohol and smoked crack cocaine. (*Id.* at 9–10.)

In the appellate brief, counsel also addressed trial testimony by Dr. Roh, the medical examiner who performed the autopsy on the victim, which corroborated Dr. Pucillo's opinion that alcohol, cigarette smoking and cocaine use could have caused the victim's heart attack. (*Id.* at 10.) Counsel further pointed to testimony from Dr. Roh that it could have taken six to twelve hours before changes to the victim's heart as a result of a fresh heart attack became apparent, (*id.*), and argued that "[t]he trial contained ample evidence to show that it was difficult to pinpoint with any medical accuracy the exact time that Mr. Jewell suffered this heart attack." (*Id.* at 14.) Counsel argued that because the victim had advanced heart disease and other stressors such as alcohol, drugs or work could bring on a heart attack in such a person, and because the time of the heart attack was indeterminate, the People failed to prove that the victim died as a result of the robbery. (*Id.*)

■ To demonstrate prejudice, petitioner must show that: "[T]here is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Grady,* 931 F.Supp. at 1061–62 (internal citations and quotations omitted). Here, counsel's initial failure to submit portions of Dr. Roh's testimony to the Appellate Division was subsequently corrected and the Appellate Division decided the appeal on a complete record. Furthermore, the appellate brief emphasized portions of the medical examiner's testimony and testimony from a cardiologist relevant to the issue of causation. Accordingly, there was no prejudice. Petitioner's claim of ineffective assistance of appellate counsel is thus dismissed on the merits.

## C. *Alleged Due Process Violations*

Petitioner makes two claims that he was denied due process. First, petitioner claims that the People failed to prove his guilt beyond a reasonable doubt. Second, petitioner claims that the jury should have heard evidence of his mental health history and drug and alcohol use at the time of the incident.

### 1. *Sufficiency of the Evidence Claim*

As an initial matter, respondent claims that the due process claim may not be heard, despite the fact petitioner argued before the Appellate Division that his conviction went against the weight of the evidence. Respondent argues that petitioner's application for leave to appeal to the New York Court of Appeals was deficient for purposes of preserving the claim for this Court's review. In his letter to the Chief Justice of the Court of Appeals, petitioner enclosed his appellate brief and asked the Court to "consider issues one through five inclusive of the Appellant's brief."

In *Grey,* the Second Circuit held that a petitioner who appended his appellate brief to a letter application to the Court of Appeals, but who only objected to the Appellate Division's rejection of one of his arguments in the letter, failed to present his two other claims to the Court of Appeals. The Court held:

> The fair import of petitioner's submission to the Court of Appeals, consisting of his brief to the Appellate Division that raised three claims and a letter to the Court of Appeals arguing only one of them, was that the other two had been

abandoned. The only possible indication that the other two claims were being pressed was the inclusion of a lengthy brief originally submitted to another court. This did not fairly apprise the court of the two claims. We decline to presume that the New York Court of Appeals has "a duty to look for a needle in a paper haystack."

*Id.* at 120 (*citing Mele v. Fitchburg Dist. Ct.,* 850 F.2d 817, 822 (1st Cir.1988)).

Subsequently, however, the Second Circuit distinguished *Grey* in a case whose facts are on point with the instant case. *See Morgan v. Bennett,* 204 F.3d 360, 369–70 (2d Cir.2000). In *Morgan,* the Second Circuit held that an initial letter in which counsel expressly sought review of "all issues outlined in defendant-appellant's ... pro se supplemental brief," the habeas corpus petitioner had fairly presented to the Court of Appeals an issue that was argued in the supplemental brief. *Id.* at 371. *See also Jordan v. Lefevre,* 206 F.3d 196, 199 (2d Cir.2000) (stating in dictum that "[h]ad appellant more clearly stated that he was pressing all of the claims raised in the attached brief, or had his letter made no argument in detail but rather only 'request[ed that the Court of Appeals] consider and review all issues outlined in defendant-appellant's brief' ... the remaining claims would have been fairly presented to the Court of Appeals") (internal citation omitted). Accordingly, we find that the rule of *Grey v. Hoke* is not an obstacle to this Court's consideration of petitioner's due process claim as to the weight of the evidence.

 We note that in his appellate brief, petitioner did not frame this claim as a violation of his due process rights, but focused instead on whether the evidence adduced at trial was sufficient to prove the elements of felony murder as set forth in N.Y.Penal Law § 125.5(3), citing only state cases. However, the People, in their response brief, cited *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in which the Supreme Court stated

that "[t]he Constitution prohibits criminal conviction of any person except upon proof of guilt beyond a reasonable doubt." 443 U.S. at 309, 99 S.Ct. at 2783. Thus, the state courts were alerted to the due process issue by virtue of the state's brief. *See Daye,* 696 F.2d at 193 n. 5. In addition, in a New York Court of Appeals opinion cited by both petitioner and the People, the court cited *Jackson* for the standard by which to measure whether sufficient evidence of guilt existed. *See Matter of Anthony M.,* 63 N.Y.2d 270, 280, 481 N.Y.S.2d 675, 471 N.E.2d 447 (N.Y.1984) (citing *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781). Furthermore, as the Eastern District of New York recognized in a case squarely on point with the facts here, a petitioner's "challenge to the sufficiency of the evidence place[s] his claim within the ambit of a long line of cases establishing a defendant's constitutional due process right to protection against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime charged." *Burke v. Mann,* No. 93–CV–5017(RR), 1995 WL 860755, at * 6 (E.D.N.Y. Dec.4, 1995). In light of the above, we find that petitioner has exhausted this claim.

We now turn to the merits of petitioner's due process claim. The Supreme Court has held that "in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254—if the settled procedural prerequisites for such a claim have otherwise been satisfied—the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial, no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson,* 443 U.S. at 324, 99 S.Ct. at 2791–92. Reviewing the record in the light most favorable to the prosecution, as we must, we are satisfied that a rational factfinder could have found petitioner guilty of second-degree murder under New York law.

The New York Court of Appeals held, in a case in which elderly victims of crime

succumbed to heart attacks days after the crimes took place, that there was sufficient proof of causation to support a manslaughter conviction in one case, and a felony murder conviction in the other. *Matter of Anthony M.*, 63 N.Y.2d 270, 481 N.Y.S.2d 675, 471 N.E.2d 447. In the felony murder case, an eighty-nine-year-old man and his wife were robbed in their apartment, threatened with a knife, bound and left lying on the floor. *Id.* at 277, 481 N.Y.S.2d 675, 471 N.E.2d 447. The man had also been struck in the face. *Id.* at 278, 481 N.Y.S.2d 675, 471 N.E.2d 447. Later that afternoon the man went to the hospital, was treated for cuts and bruises, and returned home. *Id.* The next day, he saw his personal physician, complaining of chest pains. The day after that, about fifty-six hours after the robbery, the man suffered heart failure and died. *Id.*

At the trial of the defendants for, among other crimes, felony murder, the victim's physician testified that despite the fact the victim was overweight and had arteriosclerosis, the victim was in "good general health." *Id.* Several medical experts testified that the direct cause of the victim's death was the myocardial infarction, but they differed on when the infarction occurred. One doctor placed the time of the infarction before the robbery. *Id.* at 279, 481 N.Y.S.2d 675, 471 N.E.2d 447. The court held that the medical evidence, viewed from the standard set forth in *Jackson,* supported the factfinders' determination that the defendants' actions were at least a contributing cause of the fatality. *Id.* at 281, 481 N.Y.S.2d 675, 471 N.E.2d 447.

In the instant case, there was significant evidence that petitioner's actions at least contributed to Jewell's death. First, a police officer testified that petitioner confessed to entering the trailer where Jewell was staying, striking Jewell on the head with a rolling pin, taping his arms, legs and mouth, and taking money from Jewell's wallet and his car keys. (Trial Trans. at 1074–76.)

Dr. Roh testified that although Jewell had suffered an earlier heart attack, his death was caused by a "fresh heart attack." (*Id.* at 1153.) Dr. Roh further testified that the second heart attack was stress-induced, in his opinion, by "[t]he fact that [Jewell] was hit on the head, he was tied up, he was dragged, involved in this type of altercation, that is certainly a stressful situation." (*Id.* at 1156.) Dr. Pucillo, a cardiologist, testified that following his review of the autopsy report and other test results, his opinion was "that the patient died from an episode of sudden death caused by a cardiac rhythm disturbance related to his coronary artery disease that was brought on by the physical and mental stress of his situation." (*Id.* at 984.) This testimony offers substantial support for a jury finding that petitioner's acts at the very least contributed to the victim's death. Petitioner's claim that the evidence was insufficient to support a guilty verdict is dismissed.

### 2. *Failure of the Jury to Hear of Petitioner's Drug and Alcohol Use and Mental Health History*

Petitioner claims that his due process rights were violated because the jury did not hear of his mental health problems and substance abuse. Petitioner did not raise this claim on direct appeal and the context of this claim is unclear from the face of the petition. There is no evidence that trial counsel offered this evidence and it was excluded by the trial court. Accordingly, this claim must be considered part of petitioner's claim of ineffective assistance of trial counsel. Although the claim is barred from being brought in state court, as thus may be considered exhausted, as discussed, *supra,* in Part II.A, the claim must be dismissed for lack of any showing of cause and prejudice for the default. *See also Reyes v. Keane,* 118 F.3d 136, 139–40 (2d Cir.1997) (holding that where petitioner's claim of ineffective assistance of counsel was deemed exhausted, by defaulting on that claim in state

court, petitioner had forfeited that claim on federal habeas review, even though the claim was cited as cause for another procedural default).

## CONCLUSION

For the reasons set forth above, petitioner's habeas corpus petition is denied as procedurally barred in part and altogether without merit. This Court declines to issue a certificate of appealability, as petitioner has not presented a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253; *see United States v. Perez,* 129 F.3d 255, 259–60 (2d Cir.1997), *cert. denied,* 525 U.S. 953, 119 S.Ct. 384, 142 L.Ed.2d 318 (1998).

SO ORDERED.