OPINION OF THE COURT
Dominic R. Massaro, J.
As a parole violator, Derrick Newland was reincarcerated. This pro se petition for a writ of habeas corpus asserts that regulations not in effect at the time of the commission of the predicate crime for which he was convicted, and thereafter paroled, are being brought to bear against him as additional punishment. He presses that this imposes a constitutionally impermissible penalty violative of the Ex Post Facto Clause of the United States Constitution. His argument lacks merit, and his petition seeking to vacate a parole warrant is denied.
The Parole Violation
The within petitioner was convicted of the crime of attempted criminal sale of a controlled substance in the third degree (Penal Law § 220.39 [1]) on January 18, 1995. He was thereupon sentenced to a term of imprisonment of from three to six years on February 9, 1995. Mr. Newland was released to parole supervision on November 6, 1997. At the time of his release, petitioner agreed to follow certain conditions; this he did not do, and was subsequently declared delinquent on January 7, 1999 for failing to report to his parole officer, using cocaine, failing to enter a drug treatment program, and failing to keep scheduled appointments.
A parole warrant was lodged against Mr. Newland on March 16, 1999. On that date, he was also served with a notice of violation and a violation of release report. He waived his right to a preliminary hearing; a final parole revocation hearing was held on May 7, 1999, at which time the charges against him were sustained by a Hearing Officer. An incarceratory time assessment of 12 months was imposed.
Petitioner claims that the 1997 amendments to 9 NYCRR 8005.20 (c) authorizing same are violative of his constitutional safeguards as contained in the clause. He points to the fact that said revision(s) was adopted more than two years subsequent to his conviction.
Constitutional Prohibition
The United States Constitution prohibits the passage of ex post facto laws. Section 9, clause (3) of article I, applicable to *883 Congress, reads, “No * * * ex post facto Law shall be passed,” while section 10, clause (1) of the same article reads, “No State shall * * * pass any * * * ex post facto Law” (US Const, art I, §§ 9-10). This prohibition of legislative acts “contrary to the first principles of the social compact, and to every principle of sound legislation”* was first delineated in Calder v Bull (3 Dallas [3 US] 386 [1798]). In his enumerations, Justice Chase sets forth (at 390) the context in which the prohibition is here applicable, namely, a law that “changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed” (see also, People ex rel. Pincus v Adams, 274 NY 447 [1937]). This prohibition involves the augmentation of a criminal penalty after the offending act has already been committed; the clause “forbids * * * the States to enact any law * * * [that] ‘imposes additional punishment to that then prescribed’ ” (Weaver v Graham, 450 US 24, 28 [1981], quoting Cummings v Missouri, 4 Wall [71 US] 277, 325-326 [1867]). “[T]he constitutional prohibition on ex post facto laws applies only to penal statutes which disadvantage the offender affected by them” (Collins v Youngblood, 497 US 37, 41 [1990]).
“[T]wo critical elements must be present for a criminal or penal law to be ex post facto: it must be retrospective * * * and it must disadvantage the offender affected by it” (Weaver v Graham, supra, at 29). Courts have repeatedly endorsed this understanding (see, e.g., Miller v Florida, 482 US 423 [1987]; Dobbert v Florida, 432 US 282 [1977]). The Weaver Court explained that the ban “restricts governmental power by restraining arbitrary and potentially vindictive legislation” (Weaver v Graham, supra, at 29; see also, Malloy v South Carolina, 237 US 180 [1915]). However, a law which is merely procedural and does not add to the quantum of punishment is not violative of the clause, even if it is applied retrospectively (see, California Dept. of Corrections v Morales, 514 US 499 [1995]; see also, Weaver v Graham, supra; Dobbert v Florida, supra, at 293 [“(e)ven though it may work to the disadvantage of a defendant, a procedural change is not ex post facto”]).
The Supreme Court, while noting that “the distinction between substance and procedure might sometimes prove elusive” (Miller v Florida, supra, at 433), also has stated that for an ex post facto violation to occur, the change in law must affect “ ‘substantial personal rights,’ ” rather than simply “ ‘modes of *884 procedure which do not affect matters of substance’ ” (id., at 430, quoting Dobbert v Florida, supra, at 293). Hence, “no ex post facto violation occurs if the change in the law is merely procedural and does ‘not increase the punishment’ ” (Miller v Florida, supra, at 433, quoting Hopt v Utah, 110 US 574, 590 [1884]). In Bell v Wolfish (441 US 520, 537 [1979]), the Court pointed out that “[n]ot every disability * * * amounts to ‘punishment’ in the constitutional sense,” distinguishing as between a disability which is “imposed for the purpose of punishment” and that which is “but an incident of some other legitimate governmental purpose” (id., at 538; see also, Flemming v Nestor, 363 US 603 [I960]).
Procedural Guidelines
The parole regulations at issue are not subject to an ex post facto challenge because they fall within procedural guidelines implemented to assist the Division of Parole in exercising discretion. The history of the regulations, not enacted by the Legislature but promulgated by the Division, bears out the view of a response to alleviate prison overcrowding by way of streamlining the parole revocation decision-making process {see, NYS Register, Oct. 1, 1997, at 13).
It is well settled that administrative guidelines that seek to clarify factors to be applied in the exercise of discretion do not offend constitutional proscriptions. The majority of Federal Circuit Courts have determined that the Federal parole guidelines are not “laws” within the meaning of the clause, stressing that they do not alter the United States Parole Commission’s inherent ability to exercise discretion in its decision making. The Seventh Circuit has commented: “The power to exercise discretion indicates that the guidelines are merely guides, and not laws: guides may be discarded where circumstances require; laws may not” (Inglese v United States Parole Commn., 768 F2d 932, 936 [7th Cir 1985]). “The key to the finding that guidelines are guides merely, and not laws, is * * * discretion * * * How often that discretion is exercised is immaterial” (id., at 937; see also, Prater v U.S. Parole Commn., 802 F2d 948 [7th Cir 1986]).
The Sixth Circuit, in considering the Federal parole guidelines, also determined that they “are not law, but guideposts which assist the * * * exercis[e] [of] discretion” (Ruip v United States, 555 F2d 1331, 1335 [6th Cir 1977]; see also, e.g., Wallace v Christensen, 802 F2d 1539 [9th Cir 1986]; DiNapoli v Northeast Regional Parole Commn., 764 F2d 143 [2d Cir 1985], *885 cert denied 474 US 1020 [1985]; Dufresne v Baer, 744 F2d 1543, 1550 [llth Cir 1984] [the Federal parole guidelines are “stated policy rules that show how agency discretion is likely to be exercised. They do not state rules of conduct for the public * * * (T)he * * * guidelines do not have the force and effect of law”]).
The First Department, in People ex rel. Johnson v Russi (258 AD2d 346, appeal dismissed 93 NY2d 945 [1999]), recently affirmed that the within regulation(s) do not violate the clause. The Court held (at 347) that: “the challenged regulations, setting forth penalties and dispositions for parole violators, are not law[s]’ within the meaning of the Ex Post Facto Clause, ‘but guideposts which assist the [Division of Parole] * * * in exercising its discretion’ in making parole assessments (Ruip v United States, 555 F2d 1331, 1335; Inglese v United States Parole Commn., 768 F2d 932, 936). 9 NYCRR 8005.20 (c) (1) authorizes the Division to deviate from its prescribed time assessments if paragraph (4) of the subdivision regarding exceptional circumstances applies. Further, the Hearing Officer retains discretion to recommend a disposition other than reincarceration, despite the dispositions set forth in subdivision (c), for reasons aside from those provided for under paragraph (4) (9 NYCRR 8005.20 [c], [g]).”
The foregoing reasoning applies with equal force in the instant case. The present regulations, like the Federal parole guidelines, provide for the exercise of discretion and thus are not “laws” for the purposes of the clause. Hearing Officer(s) need not follow the regulations rigidly and inflexibly, but may make parole dispositions outside of, and notwithstanding, these guidelines {see, 9 NYCRR, 8005.20 [c] [4]; [g]). Deviation below the prescribed time assessments set forth in subdivision (c) (1) of 9 NYCRR 8005.20 is expressly authorized in the circumstances delineated under paragraph (4) of subdivision (c) {see, 9 NYCRR 8005.20 [c] [4]). Additionally, under 9 NYCRR 8005.20 (g), the Hearing Officer(s) retains discretion to recommend a disposition other than reincarceration; this despite the dispositions delineated in subdivision (c) and for reasons outside of the exceptions provided for under paragraph (4) of said subdivision {see, 9 NYCRR 8005.20 [g]).
Further, it is significant that the questioned revision(s) enlarges the Hearing Officer’s exercise of discretion; thus, it is wholly procedural in nature. The regulations now permit the Officer(s), who previously forwarded a recommendation to a parole board, to impose time assessments that previously could *886 only be made by the board (see, California Dept. of Corrections v Morales, supra; see also, Miller v Florida, supra, at 433 [contrasting adjustment to presumptive sentencing range with change in the “method to be followed in determining the appropriate sentence”]; Dobbert v Florida, supra, at 293-294 [contrasting change in the “quantum of punishment” with statute that merely “altered the methods employed in determining whether * * * penalty was to be imposed”]). Enacted to permit Hearing Officers, rather than the board, to actually impose time assessments, then, and to provide guidance for determining same, the within regulations streamline the parole revocation process and minimize the parole violator’s time in local custody.
Statute Versus Regulation
Petitioner’s reliance on the Second Circuit’s decision in United States v Meeks (25 F3d 1117 [2d Cir 1994]) is unpersuasive. In Meeks, the imposition of a mandatory minimum sentence upon a defendant who violated the conditions of his supervised release contravened the clause because his underlying offense occurred prior to the enactment of the sentencing statute and no such mandate had existed at the time of his conviction. Unlike in the present case, Meeks involved a statute, not a regulation(s) which sets forth guidelines for the exercise of discretion. Further reliance on People ex rel. Smith v Greiner (176 Misc 2d 931 [Sup Ct, Westchester County 1998]) is misplaced. In People ex rel. Smith, the court inappropriately extended Meeks to the challenged regulations in rendering a decision. This despite the fact that the underlying offense had likewise been committed prior to enactment of the regulations.
Meeks (supra) is not controlling here. Petitionér is challenging guidelines providing for the exercise of administrative discretion, not a statute imposing a mandatory minimum term of imprisonment for violation(s) of supervised release, which the Smith court did not distinguish. Indeed, under both the pre-amended 1990 and the revised 1997 versions of 9 NYCRR 8005.20 (c), the Hearing Officer(s) was and yet remains free to recommend or impose alternatives to reincarceration (see, 9 NYCRR 8005.20 [c] [4]; [g]).
The parole regulations at issue do not resonate with the interests to which the clause is addressed. A finding of parole violation is not to be construed as attendant to the original punishment or as an additional punishment for a predicate crime. Petitioner cannot successfully contend that the language *887 and structure of 9 NYCRR 8005.20 (c), or the nature of its intent, requires the court to recognize a retrospective punitive design. Inmates are gratuitously released from incarceration under parole supervision. This is an act of grace and not of right (see, Matter of Briguglio v New York State Bd. of Parole, 24 NY2d 21 [1969]); notwithstanding, they remain under supervision until the maximum expiration sentence date. Upon violation of a condition of parole, and reincarceration in accordance therewith, said reincarceration cannot extend beyond the originally imposed maximum expiration date pronounced at the time of sentencing. Hence, it cannot be argued that an additional or more severe punishment is being inflicted. Rather, the parolee is merely reincarcerated within the time frame of sentence under his original conviction. This does not have the effect of lengthening a parolee’s period of incarceration, that is, of extending punishment or making more onerous the punishment for a predicate offense for which he has already been sentenced, and thus is not violative of the ex post facto prohibition (see, Lynce v Mathis, 519 US 433 [1997]).
Discretion
It should be noted that the Hearing Officer in the present case clearly exercised discretion in determining petitioner’s time assessment. She did not apply the provisions of 9 NYCRR 8005.20 (c) mechanically. She made detailed findings regarding Mr. Newland’s criminal and parole history, and expressly cited the specific factors that led her to categorize him as a “Category 1” violator, a categoy that mandated the imposition of at least 15 months of incarceration upon a finding of violation, but to which, in her discretion, she mitigated and imposed an alternative 12-month period of incarceratory time.
Even were the court to determine that the regulations at issue are subject to ex post facto analysis, they would not make for proscription in that they do not “ ‘change! ] the legal consequences of acts completed before [their] effective date’ ” (Miller v Florida, 482 US, supra, at 430). Petitioner violated his parole in 1999, after the new regulations took effect. The punishment imposed under revocation of his release was triggered exclusively by the violation of its terms and conditions; this cannot be construed as attendant to the original punishment for the crime of which he was found guilty in 1995 (see, United States v Reese, 71 F3d 582 [6th Cir 1995], cert denied 518 US 1007 [1996]).
Nor can it be said that the regulations increase punishment for petitioner’s original conduct. Mr. Newland is already liable *888 for the punishment earlier imposed upon him; in no manner has this been altered by the challenged regulations. He cannot be held in confinement beyond the pronounced term and there is no reason to think that his reincarceration would extend his actual period of confinement. At the time of his release to parole supervision, petitioner clearly was made aware that violation of the terms and conditions of his release could result in reincarceration. There is no manifest unjustness to be found in this fair warning. Contrastingly, another parolee, identically situated, who did not violate the terms and conditions of his release, would have suffered no ill consequence from the passage of the revised regulations. The consequences that Mr. Newland must now bear are solely resultive of new bad acts committed by him after the regulation revision(s).
Conclusion
Petitioner has no inherent liberty or property interest in parole in New York State (see, Greenholtz v Inmates of Neb. Penal & Correctional Complex, 442 US 1 [1979]; Matter of Russo v New York State Bd. of Parole, 50 NY2d 69 [1980]). To the extent that he was made aware of his obligation to conform to certain standards as a special condition of release, the parole warrant is sustained. The herein change of regulations cannot be equated with governmental oppression of a kind feared by the Framers from the excesses which had been wrought by the Parliament of Great Britain prior to the establishment of the United States. Nor does his violation make more burdensome the debt Mr. Newland presently owes the State before he may be permitted to fully reintegrate himself into her society.

 Madison, The Federalist No. 44, at 299 (introduction by Van Doren, Heritage Press ed 1945).