Anthony SANTORELLI, Petitioner,

v.

James R. COWHEY, Justice of the Supreme Court of the State of New York, Rocco A. Pozzi, Commissioner, Department of Corrections, Westchester County, New York, and Eliot L. Spitzer, Attorney General, New York, Respondents.

No. 00 CIV. 8292 BDP.

United States District Court,
S.D. New York.

Dec. 8, 2000.

Diarmuid White, New York City, for Petitioner.

Joseph M. Latino, Office of the District Attorney, White Plains, NY, for Respondents.

## MEMORANDUM DECISION AND ORDER

PARKER, District Judge.

Anthony Santorelli filed this Petition for a writ of habeas corpus challenging his 1998 conviction on charges of tampering with physical evidence. For the reasons set forth below, the Petition is denied.

## BACKGROUND

Petitioner was tried in Supreme Court, Westchester County on four counts of tampering with physical evidence, namely, the bloody clothing worn by the killers of Louis Balancio—a knifing victim—on February 4, 1994. An FBI agent witnessed the Petitioner disposing of bloody clothes in two plastic trash bags behind a fast food restaurant in the Bronx hours after Balancio was murdered. The results of tests conducted in the FBI laboratory revealed that petitioner's fingerprints were found both on the inside and the outside of one of the bags. Tests further confirmed that the blood on the clothing was that of Balancio.

On March 19, 1998, Petitioner was found guilty on all four counts, and was sentenced to a term of imprisonment of 1 and ⅓ to 4 years. The judgment of conviction was stayed pending appeal by order of the New York Appellate Division upon $350,000 bail. The Appellate Division affirmed the conviction on December 6, 1999, and the New York Court of Appeals followed by affirming on October 26, 2000. Petitioner was ordered to surrender on November 1, 2000.

Petitioner filed an emergency petition in federal court for a stay of his sentence pending a determination of his federal habeas claim. Following a hearing before Part I Judge Lewis Kaplan on October 31, 2000, Petitioner was granted a temporary stay from the execution of judgment pending a further hearing on his stay application. The application was granted by this Court on November 15, 2000, staying the execution of his sentence pending an expedited determination of this habeas Petition on the merits.

Mr. Santorelli sets forth a single exhausted claim as the basis of his habeas Petition—namely, that the state trial judge, Justice James Cowhey, incorrectly instructed the jury on the meaning of "reasonable doubt," depriving him of his federal constitutional rights to due process. In his charge, Justice Cowhey instructed the jury, in relevant part, that:

> You do not have to believe that he is guilty to such a degree that there can be no possibility of doubt about it. The law does not require that because nothing in this life is so absolutely certain that it can be proven that completely; but you do [sic], if you're going to convict the defendant after being satisfied of his guilt in a way that leaves you without any reasonable doubt of it. Those words "reasonable doubt" means nothing more or less than the two words themselves mean.
>
> You know perfectly well what is doubt. It's something that makes you unsure or uncertain. If your doubt is simply of the fleeting or minimal type, it's not a basis for avoiding the conclusion or for avoiding the determination of the facts in this matter. *A reasonable doubt goes a good deal further.* A reasonable doubt is a doubt for which you have what appears important to be a reason based upon the evidence in the case or lack of evidence in the case. *It refers to a good deal more than a mere possibility.* If such reasonable doubt remains after all of the proof has been

given, then the People have not established guilt under our law. If you do not have a reason—something that a reasonable person would recognize as making sense for that doubt—you should disregard that doubt if you have [sic] otherwise convinced of guilt. But if you have a reasonable doubt, one based upon the testimony in this case, one that seems to make sense, not just some kind of mere whim or impulsive idea or some kind of emotional gut reaction, because that would not be a reasonable doubt, or if you have a reason based upon the lack of evidence in the case, on one of the essential elements of the crime charged and thereby they are being considered by you [sic], then you have come up with a reasoning for voting not guilty.

Now in order to understand this term "proof beyond a reasonable doubt," I am going to approach its definition both from the positive as well as from the negative point of view.

Firstly, from the negative point of view, I will tell you what the term is not. The term does not refer to just any kind of a doubt, such as a mere whim, a guess, a surmise or even a feeling that the accused may not be guilty.... It is not a requirement of proof beyond all doubt. It is not a requirement of proof to some kind of mathematical or scientific certainty. On the other hand, it's not proof that the defendant is guilty by a mere preponderance of the weight of credible evidence.

.     .     .     .     .

Now having indicated to you what that term is not, we shall now approach the definition from the positive point of view. And I will tell you what reasonable doubt is. A reasonable doubt is a doubt which you conscientiously have at the use of your power of reasoning which arising [sic] out of the credible evidence or lack of credible evidence. It is a doubt for which you have a reason. And when you're convinced that you have no doubt in reason of the defen-

dant's guilt then that is sufficient and you must render a verdict accordingly.

Transcript of Proceedings, at 1016–19 (emphasis added).

In particular, Petitioner contends that because of the underlined portions of the charge above—that a reasonable doubt "goes a good deal further" than a fleeting or minimal doubt, and is "a good deal more than a mere possibility"—the jury was likely to apply those instructions in an unconstitutional manner.

## DISCUSSION

### I. Preservation of Federal Issue

Respondents first contend that Petitioner is barred from advancing his habeas claim because he failed to sufficiently object to the reasonable doubt charge at trial. While the parties acknowledge that Petitioner did object to the "good deal more" / "good deal further" phrases at side bar, Respondents assert that because counsel never articulated federal constitutional grounds to the trial court at that time, Petitioner failed to properly preserve that issue.

However, "[t]he Supreme Court has held that a procedural default does not bar consideration of a federal claim on habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Tankleff v. Senkowski*, 135 F.3d 235, 247 (2d Cir.1998) (quoting *Coleman v. Thompson*, 501 U.S. 722, 735, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)). In *Tankleff*, the New York Appellate Division rejected the defendant's arguments by simply stating, "We have examined the defendant's remaining contentions and find them to be without merit." *People v. Tankleff*, 606 N.Y.S.2d 707, 711, 199 A.D.2d 550 (1993). Similarly, the New York Court of Appeals said only, "We have examined defendant's remaining contentions and find them to be either meritless or unpreserved." *People v. Tankleff*, 622 N.Y.S.2d 503, 505, 84 N.Y.2d

▉

992, 646 N.E.2d 805 (1994). Because our Court of Appeals found it unclear whether the New York high court rejected the defendant's claim because it was unpreserved or because it was deemed meritless as a matter of federal constitutional law, it found that it could address the claim on habeas review. *See Tankleff,* 135 F.3d at 247.

This holding was reconfirmed in *Jones v. Stinson,* 229 F.3d 112 (2d Cir.2000), where the Second Circuit recently stated that "[while] the [state] appellate division may have believed that [the defendant] was procedurally barred .... we follow the presumption established by the Supreme Court and ask not what we think the state court actually might have intended but whether the state court plainly stated its intention." *Id.* at 118. There, though the state appeals court set forth the factual predicate for finding a procedural default, "it never actually stated that the issue was not preserved." *Id.* Accordingly, our Court of Appeals held that the district court below correctly reached the merits of the habeas petition.

▉ In this case, the N.Y. Appellate Division expressly reached the merits of Petitioner's claim, stating that "[c]ontrary to the defendant's contention, the reasonable doubt charge was proper." *People v. Santorelli,* 267 A.D.2d 259, 259, 699 N.Y.S.2d 291 (1999). The New York Court of Appeals, however, was unclear as to whether it addressed the claim on the merits, stating only that "[d]efendant's remaining contentions, to the extent preserved, are without merit." *People v. Santorelli,* 2000 WL 1599191, 96 N.Y. 412, ——, 2000 N.Y. Slip Op. 09151, at *15 (2000).

This Court finds the New York Court of Appeals ruling to be, at best, ambiguous as to whether it determined that Petitioner's federal constitutional claims concerning the jury instruction had been dismissed because they were unpreserved as a matter of state law or because they lacked merit. Absent a clear expression of that

court's intent, the Court finds that it may address Petitioner's habeas claim. *See Jones,* 229 F.3d at 118–19 ("Because the appellate division ... did not explicitly state its intention to rely upon an independent and adequate state ground, we conclude that the district court correctly reached the merits of the habeas petition."); *Tankleff,* 135 F.3d at 247; *Bolling v. Stinson,* 1999 WL 287733, *4 (E.D.N.Y. 1999) ("The Appellate Division's statement is too ambiguous to preclude federal review on the independent ground of procedural default.").

## II.   28 U.S.C. § 2254(d)(1)

In order to prevail on his habeas Petition, Mr. Santorelli must satisfy the requirements of 28 U.S.C. § 2254(d)(1). That statute reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim ... resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States

28 U.S.C. § 2254(d)(1). As Petitioner concedes that the "contrary to" prong of § 2254(d)(1) is not applicable, he must show that Justice Cowhey's "reasonable doubt" charge was an "unreasonable application" of clearly established Supreme Court precedent.

### A.   Unreasonable Application

▉ While the Supreme Court has not yet defined the exact contours of the reasonableness standard under § 2254(d)(1), it has clarified the standard in two ways. First, to determine whether an application of Supreme Court law is unreasonable, federal habeas courts must employ an objective standard. *See Williams v. Taylor,* 529 U.S. 362, ——, 120 S.Ct. 1495, 1521,

146 L.Ed.2d 389 (2000). "Rather than decide reasonableness by reference to the decisions of 'all reasonable jurists,' .. federal courts 'should ask whether the state court's application of clearly established federal law was objectively [as opposed to subjectively] unreasonable.'" *Lurie v. Wittner*, 228 F.3d 113 (2d Cir.2000) (quoting *Williams v. Taylor*, 529 U.S. at ——, 120 S.Ct. at 1521).

■ Second, an unreasonable application is more than a mere incorrect or erroneous application of federal law. *Williams v. Taylor*, 529 U.S. at ——, 120 S.Ct. at 1522–23. Recently, our Court of Appeals has stated that the increment of error need only be a small degree beyond being incorrect. *Francis v. Stone*, 221 F.3d 100, 111 (2d Cir.2000) ("Some increment of incorrectness beyond error is required. We caution, however, that the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.") (internal quotations omitted); *Lainfiesta v. Artuz*, 2000 WL 1459800 (S.D.N.Y. Sept. 29, 2000).

The Court is mindful that whether § 2254(d)(1) is triggered where there is an unreasonable refusal by a state court to extend Supreme Court precedents is an issue not yet conclusively resolved in this Circuit. *See Ramdass v. Angelone*, 530 U.S. 156, 120 S.Ct. 2113, 2120, 147 L.Ed.2d 125 (2000) (plurality opinion of Kennedy, J., in which Rehnquist, C.J., and Scalia and Thomas, JJ. join) ("a state determination may be set aside under [AEDPA's] standard if, under clearly established federal law, the state court was unreasonable in refusing to extend the governing legal principle to a context in which the principle should have controlled."); *Lurie*, 228 F.3d at 129 ("we decline to decide ... whether unreasonable refusals to extend Supreme Court precedents are sufficient to satisfy AEDPA's requirements of an 'unreasonable application of' Supreme Court caselaw."). Because this Court finds that there was no unreasonable refusal to extend *or* apply Supreme Court precedent, that open question need not be decided here. Instead, for purposes of this opinion, the Court assumes *arguendo* that § 2254(d)(1) is triggered where there is an unreasonable refusal to extend federal law as clearly established by the Supreme Court.

**B. Clearly Established Supreme Court Precedent**

■ "Clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), refers to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. at ——, 120 S.Ct. at 1522. Under § 2254(d)(1), "the source of clearly established law [is restricted] to [the Supreme Court's] jurisprudence." *Id.*

■ In reviewing jury instructions on habeas relief, the Supreme Court instructs that the federal court must inquire as to "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." *Estelle v. McGuire*, 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). The instruction "may .not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." *Id.*

Moreover, in *Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), the Supreme Court held that if a jury instruction defining the reasonable doubt standard failed to meet constitutional muster, a harmless error analysis would not apply. Constitutionally deficient reasonable doubt charges are "structurally flawed," and strike at the very heart of the "trial mechanism." *Id.* at 281, 113 S.Ct. 2078. Such deficiencies—if they can be demonstrated—are so fundamentally problematic that they should not be subjected

to the further layer of a "harmless error" analysis. *Id.*

Petitioner cites *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), to challenge the trial court's instruction on "reasonable doubt." There, the Supreme Court—in a *per curiam* decision—found the charge to be constitutionally deficient because the trial court equated a reasonable doubt with a "grave uncertainty" and an "actual substantial doubt," and stated that what was required was a "moral certainty" that the defendant was guilty. The Supreme Court held that the words "substantial" and "grave," as they are commonly understood, suggested a higher degree of doubt than is necessary under the reasonable doubt standard. *Id.,* at 329. Taken in combination with the reference to "moral certainty"—as opposed to evidentiary certainty—the court found that a reasonable juror could have interpreted the instruction to allow a finding of guilt below that which is required under the Due Process Clause, and reversed the conviction. *Id.* at 330.

## C. Did Trial Court's Charge Violate § 2254(d)(1)?

■ As noted, Petitioner contends that the "good deal further" / "good deal more" formulations in Justice Cowhey's reasonable doubt charge was reasonably likely to instruct the jury to apply that standard in a way that violates the Constitution, and, accordingly, violated § 2254(d)(1). *See Estelle v. McGuire,* 502 U.S. at 72, 112 S.Ct. 475. Specifically, Petitioner argues that the words used in Justice Cowhey's charge—stating that reasonable doubt goes "a good deal further" than fleeting or minimal doubt, and that it "refers to a good deal more than a mere possibility"— was of the same nature objected to in *Cage* because they refer to an indefinite quantity and magnitude of doubt. By permitting the jury to determine his guilt based upon that standard, Petitioner contends that Justice Cowhey unreasonably applied and/or extended the holding in *Cage,* and violated Petitioner's clearly established constitutional rights.

Petitioner's reliance upon *Cage v. Louisiana* falls short. As an initial matter, Justice Cowhey's charge did not equate reasonable doubt with the phrases Petitioner objects to. Rather, both phrases were articulated as comparative terms, to be compared with capricious or unreasonable doubt. Accordingly, those phrases did not limit the definitional parameters of reasonable doubt as they did in *Cage,* nor did they define a higher quantum or degree of doubt than what is permitted under the Due Process Clause.

Second, nothing in Justice Cowhey's charge can be analogized to the term "moral certainty," which was the phrase in *Cage* that—in combination with "grave uncertainty" and "actual substantial doubt"— made it reasonably likely that a juror could have applied "reasonable doubt" in a way that violated the Constitution. *See Cage,* 498 U.S. at 41, 111 S.Ct. 328. Accordingly, it cannot be said that the state court's instruction on reasonable doubt misapplied the holding in *Cage* or unreasonably refused to extend that holding to Petitioner's case.

■ Moreover, while there may be some force to Petitioner's contentions that the objectionable language, considered in isolation, may have been somewhat imprecise, "not every unhelpful, unwise, or even erroneous formulation of the concept of reasonable doubt in a jury charge renders the instruction constitutionally deficient. The reviewing court must examine the charge as a whole, *see Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400–01, 38 L.Ed.2d 368 (1973), and assess 'whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet' the standard of proof beyond a reasonable doubt." *Vargas v. Keane,* 86 F.3d 1273, 1276 (2d Cir.1996) (quoting *Victor v. Nebraska,* 511 U.S. 1, 6, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994)).

After review of the charge, the Court finds that the reasonable doubt instruction—viewing it as a whole—was not reasonably likely to instruct the jury to apply that standard in a way that violated the Constitution. *See Estelle v. McGuire*, 502 U.S. at 72, 112 S.Ct. 475. In later portions of the charge, the trial court instructed that a doubt founded in "reason" was "something that a reasonable person would recognize as making sense for that doubt," that a reasonable doubt could be based upon "the lack of evidence in the case," or "upon the testimony in [the] case," and was one "that seems to make sense." Transcript at 1017–18.

Moreover, the trial judge told the jury that he would approach the definition of reasonable doubt from both a negative and a positive point of view. From the "negative" point of view, he stated that reasonable doubt "does not refer to just any kind of a doubt, such as a mere whim, a guess, a surmise or even a feeling that the accused may not be guilty." Transcript at 1019. From the "positive" point of view, reasonable doubt was said to be "a doubt which you conscientiously have at the use of your power of reasoning which aris[es] out of the credible evidence or lack of evidence. It is a doubt for which you have a reason." Transcript at 1019.

The Court is satisfied that these later portions of the reasonable doubt charge—which were delivered immediately after the language objected to by the Petitioner—were sufficient to defeat Petitioner's claim that the objectionable language was reasonably likely to instruct the jury to apply that standard in a way that violates the Constitution. *See Vargas*, 86 F.3d at 1276 ("an asserted error in a reasonable doubt instruction may be innocuous or inconsequential when viewed in the context of the charge as a whole"); *Chalmers v. Mitchell*, 73 F.3d 1262, 1267 ("Sometimes, erroneous portions of the jury instructions are offset when considered in the context or explained by the trial court in later sections of the instruction.").

"Courts have long recognized that the concept of 'reasonable doubt' is not susceptible of easy definition." *Vargas*, 86 F.3d at 1280. While this Court recognizes that the concept can be described in different ways, Petitioner's challenge to the state trial court's instruction "arises on habeas review, and [this Court's] inquiry is whether the instruction is constitutional, not whether it is exemplary." *Id.*

## CONCLUSION

For the foregoing reasons, the Petition is denied. The Clerk of the Court is directed to dismiss the Petition. In addition, the stay of the execution of the state judgment shall expire 30 days after the date of this Order. A Certificate of Appealability is granted.

SO ORDERED: