**Etoile D'JOY a/k/a David
Jones, Petitioner,**

v.

**NEW YORK STATE DIVISION OF
PAROLE, Supt. T. Poole and
Eliot Spitzer, Respondents.**

**No. 00 CIV. 4471(WCC).**

United States District Court,
S.D. New York.

Jan. 3, 2001.

Etoile D'Joy a/k/a David Jones, Gouverneur, NY, Petitioner Pro Se.

Eliot Spitzer, Attorney General of the State of New York (Susan M. Barbour, Asst. Attorney General, Of Counsel), New York City, for Respondents.

## *OPINION AND ORDER*

WILLIAM C. CONNER, Senior District Judge.

Petitioner pro se Etoile D'Joy a/k/a David Jones, an inmate at Gouverneur Correctional Facility, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 *et seq.* Petitioner alleges that the parole revocation decision rendered on February 10, 1999, by Administrative Law Judge ("ALJ") John F. Casey, violated the Ex Post Facto Clause of the United States Constitution and that, as a result of a racial conspiracy, he was denied a meaningful appeal in violation of his procedural due process rights. For the reasons stated hereinafter, the petition is denied.

## BACKGROUND

On March 29, 1990, a Manhattan jury found petitioner guilty of robbery in the Second Degree, *see* N.Y. PENAL LAW § 160.10 (McKinney 1999), Resisting Arrest, *see* N.Y. PENAL LAW § 205.30 (McKinney 1999), and Attempted Assault in the Third Degree, *see* N.Y. PENAL LAW §§ 110; 120.00 (McKinney 1998). Petitioner was sentenced to an indeterminate sentence of four to twelve years of imprisonment for the robbery charge, two determinate sentences of one year for the resisting arrest charge and ninety days for the attempted assault charge. All sentences were to run concurrently.

## A. *Underlying Facts*

Petitioner, in the possession of a handgun and with the aid of an unidentified male accomplice, stole an unspecified amount of money from the victim. During the initial attack, petitioner placed the victim in a "headlock" and repeatedly punched him in the head while his accomplice took the victim's money. Approximately three months later, petitioner physically attacked the victim again and was subsequently arrested.

On November 2, 1994, petitioner was released to parole supervision upon his agreement to special terms and conditions, including rule # 2, which specified that he make "office/and or written reports as directed." During his parole supervision petitioner appeared for his arrival report and two subsequent office reports. However on November 23, 1994 petitioner failed to report to his parole officer, which led to a declaration of delinquency on December 14, 1994. Petitioner could not be located at the house of his girlfriend, with whom he initially proposed to reside, or at the alternative residence given by him during his arrival report. Accordingly, on January 6, 1995, a parole warrant was issued against petitioner.

On October 10, 1998, petitioner was served with a Notice of Violation, which stated that a voluntary and knowing waiver of the right to appear could result from the voluntary failure to appear and lead to a "hearing in absentia ... and a final determination [can] be made regarding the charges pending against you." Although petitioner received notice of the parole revocation hearings, initially to be held on November 23, 1998, and the postponed

date of February 9, 1999, he refused to appear for either of them. Therefore, on February 9, 1999, the ALJ held an in absentia hearing where it was determined that petitioner violated his parole based on the fact that he was "directed to report and did not report, no record of contact made between him and the division for four years." On February 10, 1999, the ALJ revoked petitioner's release and sentenced him to reincarceration for seven years, ten months and four days; the remaining sentence time as of the date of delinquency, December 14, 1994.

### B. *Procedural History*

On April 14, 1999, petitioner perfected his appeal to the New York State Division of Parole, Appeals Unit (hereinafter the "Appeals Unit"), which failed to issue its findings and recommendations within four months thereof. As a result, on or about December 6, 1999, petitioner sought judicial review and filed an appeal with the Appellate Division, Third Department alleging that the application of the more severe parole regulations, enacted subsequent to the offense, violated the Ex Post Facto Clause. This claim was grounded on the fact that the time assessment was based upon parole guidelines in effect at the time of the parole revocation hearing, *see* N.Y. COMP. CODES R. & REGS. tit. 9, § 8005.20(c) (the "1997 Amendments"), rather than the original regulations that were in effect at the time of the underlying conviction, March 29, 1990 (the "1990 Guidelines"). Specifically, petitioner alleged that pursuant to the more severe 1997 Amendments, his offense constituted a "Category 1" violation which resulted in an excessive time assessment relative to that which would not have been made under the 1990 Guidelines. This appeal was denied on January 27, 2000.

On February 3, 2000, petitioner filed a motion for leave to appeal to the New York Court of Appeals on the above mentioned grounds as well as the failure of the Appeals Unit to provide him with a "meaningful appeal in a timely fashion." On April 6, 2000, the motion was denied. *See People ex rel. Jones v. New York State Div. of Parole*, 94 N.Y.2d 763, 708 N.Y.S.2d 52, 729 N.E.2d 709 (2000). On or about August 19, 1999, petitioner filed a claim in the Court of Claims against the State based upon the unlawful imprisonment that resulted from the improper application of the 1997 Amendments. On July 5, 2000, the Honorable Thomas J. McNamara granted defendant's motion for summary judgment. Judge McNamara held that the application of the 1997 Amendments was not unconstitutional because section 8005.20(c) was not a law within the meaning of the Ex Post Facto Clause. Accordingly, there was neither a claim for false imprisonment nor a constitutional violation.

On July 19, 2000, petitioner filed this habeas petition alleging that application of the 1997 Amendments, rather than the 1990 Guidelines violated the Ex Post Facto Clause. Petitioner also claims that his procedural due process rights were violated as a result of a racial conspiracy, the Appeals Unit failed to issue its findings and recommendations within four months of his perfected appeal.

### DISCUSSION

### I. *Applicable Law*

A petition for habeas corpus will not be granted "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1) (Supp.2000).

### II. *1990 Guidelines Versus 1997 Amendments*

The 1990 Guidelines, provided inter alia, that upon violation of parole, the presiding officer may:

(1) direct the violator's reincarceration and fix a date for consideration by the board for rerelease on parole or conditional release, as the case may be; or

(2) direct that the violator be restored to supervision under the same or such other conditions of release as the board may deem appropriate; or

(3) direct that the violator be placed in a parole transition facility for a period not to exceed 180 days.

N.Y. COMP. CODES R. & REGS. tit. 9, § 8005.20(c) (amended Jan. 13, 1992, Mar. 17, 1992, Apr. 20, 1993, June 22, 1993, Nov. 20, 1995, Jan. 29, 1996, and Dec. 24, 1996).

The 1997 Amendments, currently in effect and the focus of the instant controversy, grant the hearing officer the power to distinguish between "Category 1, 2, and 3" violators and suggest a minimum time assessment for each category of violator.[1] *See* N.Y. COMP. CODES R. & REGS. tit. 9, § 8005.20(c)(1)-(3). The minimum time assessment for "Category 1" violators, which included petitioner, was increased to a lesser of 15 months or the maximum expiration of the sentence. *See*

*id.* § 8005.20(c)(1). However, a mitigating reduction of up to three months can be applied if the violator accepts responsibility for his actions. *See id.* If the violator and New York State Division of Parole (the "Division") both consent, the violator may be restored to a drug treatment facility. *See id.* Furthermore, under the current version, the hearing officer may "deviate from its prescribed time assessments" if the violator fits into certain categories under subsection (c)(4) or "recommend a disposition other than reincarceration" pursuant to subsection (g).[2] *People ex rel Johnson v. Russi,* 258 A.D.2d 346, 685 N.Y.S.2d 661, 662 (1999), *leave denied,* 93 N.Y.2d 945, 693 N.Y.S.2d 504, 715 N.E.2d 506 (1999) (dismissing appeal based upon lack of substantial constitutional question); *see* N.Y. COMP. CODES R. & REGS. tit. 9, § 8005.20(c)(4), (g).

In this case, it is clear that the time assessment was based upon the 1997 Amendments rather than the 1990 Guidelines. The ALJ referred to the fact that petitioner was a "Category 1" violator.[3] Furthermore, in this case, the ALJ made

1. A time assessment determines the date upon which a parole violator may be considered for rerelease. *See* N.Y. COMP. CODES & REGS. tit. 9, § 8002.6(a).

2. Section 8005.20(g) provides:
   *Board placement in programs that are alternatives to reincarceration.* A member or members of the board may direct that an alleged violator be placed in an alternatives to reincarceration program for a specified period of time. Successful completion of the program prior to the commencement of a final revocation hearing will result in a cancellation of delinquency, as authorized by section 8004.3(g) of this Title. Following completion of a final hearing, restoration to a parole transition facility, or other appropriate alternatives to reincarceration program, may be recommended by the presiding officer and ordered by the board in accordance with the number of board members' concurrence required by section 8004.3(d)(2) of this Title, except that if the presiding officer is a hearing officer he or she may take the place of the first board member referred to in section 8004.3(d) of this Title.

N.Y. COMP. CODES R. & REGS tit. 9, § 8005.20(g).

3. Pursuant to section 8805.20(c)(1)(v), "Category I" violators include those paroled from a sentence imposed on any violent felony offense involving the use or threatened use of a deadly weapon or dangerous instrument or the infliction of physical injury upon another. Petitioner was paroled from robbery in the Second Degree which is defined under New York law as forcibly stealing property: (1) while being aided by another actually present; (2) during the course of the crime or immediate flight therefrom he or the accomplice (a) causes physical injury to a non-participant in the crime or (b) displays what appears to be, inter alia, a firearm; or (3) the property consists of a motor vehicle. *See* N.Y. PENAL LAW § 160.10. It is irrelevant that the certificate of conviction omits any reference to which subsection of second degree robbery petitioner was convicted. As the ALJ explained, petitioner was found to be holding what appeared to be a weapon. Furthermore, he was aided by another while causing physical injury.

the assessment himself; pursuant to the 1990 Guidelines, the presiding officer was required to make a written recommendation of findings of fact to the Board of Parole with respect to any disposition made pursuant to subsection (c)(1) or (c)(2). *See* N.Y. COMP. CODES R. & REGS. tit. 9, § 8005.20(d) (amended Jan. 13, 1992, Mar. 17, 1992, Apr. 20, 1993, June 22, 1993, Nov. 20, 1995, Jan. 29, 1996, and Dec. 24, 1996). Therefore, the issue before this Court is whether the application of the 1997 Amendments was "contrary to" or "involved an unreasonable application" of established Supreme Court precedents involving ex post facto violations.

### A. *Clearly Established Supreme Court Precedent re Ex Post Facto Violations*

"The threshold question ... is whether [petitioner] seeks to apply a rule of law that was clearly established at the time his state-court conviction became final." *Vasquez v. Strack*, 228 F.3d 143, 148 (2d Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362, 389, 120 S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000)).

■ Aimed at preventing both state and federal legislative abuses, *see Miller v. Florida*, 482 U.S. 423, 429–30, 107 S.Ct. 2446, 2450–51, 96 L.Ed.2d 351 (1987), the Ex Post Facto Clause, *see* U.S. CONST. art. I, § 9, cl. 3; art. I, § 10, cl. 1, forbids both federal and state governments from passing any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981) (citations omitted); *DiNapoli v. Northeast Regional Parole Comm'n*, 764 F.2d 143 (2d Cir.1985), *cert. denied*, 474 U.S. 1020, 106 S.Ct. 568, 88 L.Ed.2d 553 (1985). The Ex Post Facto Clause protects different rights from those covered under the Due Process Clause. Therefore, it is irrelevant to the initial inquiry whether the right to parole is "vested," "affirmative" or "pre-existing."

*Weaver*, 450 U.S. at 29–30, 101 S.Ct. at 964–65. An ex post facto violation occurs if the law is both " 'retrospective ... [and] disadvantage[s] the offender affected by it.' " *Miller*, 482 U.S. at 430, 107 S.Ct. at 2451 (quoting *Weaver*, 450 U.S. at 29, 101 S.Ct. at 964). "A law is retrospective if it 'changes the legal consequences of acts completed before its effective date.' " *Miller*, 482 U.S. at 430, 107 S.Ct. at 2451 (quoting *Weaver*, 450 U.S. at 31, 101 S.Ct. at 965). It works to the disadvantage of the offender if the subsequently enacted law changes the definition of a crime or increases the penalty by which a crime is punishable. *See Weaver*, 450 U.S. at 28, 101 S.Ct. at 960.

■ However, not every law that 'may work to the disadvantage of a defendant' is violative of the Ex Post Facto Clause. *Portley v. Grossman*, 444 U.S. 1311, 1312, 100 S.Ct. 714, 715, 62 L.Ed.2d 723(1980) (Rehnquist, Circuit Justice 1980) (quoting *Dobbert v. Florida*, 432 U.S. 282, 293, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977)); *see Miller*, 482 U.S. at 430–31, 107 S.Ct. at 2451. The Ex Post Facto Clause does not " 'limit the legislative control of remedies and modes of procedure which do not affect matters of substance.' " *Portley*, 444 U.S. at 1312, 100 S.Ct. at 715 (quoting *Dobbert*, 432 U.S. at 293, 97 S.Ct. at 2298). Although the Supreme Court has acknowledged that the distinction of substantive versus procedural law "might sometimes prove elusive," it has stated that procedural law 'does not increase the punishment, nor change the ingredients of the offence [sic] or the ultimate facts necessary to establish guilt.' *Miller*, 482 U.S. at 433, 107 S.Ct. at 2452–53 (quoting *Hopt v. Utah*, 110 U.S. 574, 590, 4 S.Ct. 202, 210, 28 L.Ed. 262 (1884)).

In *Portley*, Justice Rehnquist denied the application for a stay of execution of the Court of Appeal's denial of the applicant's writ of habeas corpus. He held that the application of federal guidelines in effect at the time of the revocation of parole which provided that the "determination to grant

or deny parole is 'committed to agency discretion'" did not violate the Ex Post Facto Clause. 444 U.S. at 1312, 100 S.Ct. at 715 (citations omitted). The regulations in effect at the time of the original sentencing stated that a parole violator "may be required to serve all or any part of the remainder of the term for which he was sentenced." *Id.*, 100 S.Ct. at 715. Justice Rehnquist held that the federal guidelines at issue in the case were merely a framework for the Commission's exercise of discretion and that the terms of the sentence had not been altered in any way. "The guidelines, therefore, neither deprive applicant of any pre-existing right nor enhance the punishment imposed." *id.* at 1312–13, 100 S.Ct. 714. They were in the nature of a procedural change because they assisted the Commission in the exercise of its discretion and were therefore permissible under *Dobbert.*

■ However, the Supreme Court has not determined whether administrative policies or regulations are laws subject to ex post facto regulation. *See Hamm v. Latessa*, 72 F.3d 947, 956 n. 14 (1st Cir. 1995). Courts of Appeals have based their decisions on whether the regulations remove the discretion of the hearing officer. If the hearing officer has discretion in the decision-making and the regulations are can be categorized as mere guidelines used in aid of such decision-making, there is no constitutional violation. *See id.* However, if the regulations are binding and remove the discretion of the hearing officer, their retroactive application can be considered a violation of the Ex Post Facto Clause. *See id.* (citing *Akins v. Snow*, 922 F.2d 1558, 1561 (11th Cir.1991), *cert. denied*, 501 U.S. 1260, 111 S.Ct. 2915, 115 L.Ed.2d 1079 (1991)); *Rodriguez v. United States Parole Comm'n*, 594 F.2d 170, 174 (7th Cir.1979); *Love v. Fitzharris*, 460 F.2d 382, 385 (9th Cir.1972), *vacated as moot*, 409 U.S. 1100, 93 S.Ct. 896, 34 L.Ed.2d 682 (1973).

### B. *"Contrary To"*

■ A state court's decision is contrary to established Supreme Court precedent if it is "substantially different." *Williams*, 529 U.S. at 404–05, 120 S.Ct. at 1519. The Supreme Court has identified two scenarios in which a state court's decision may be considered established precedent: first, if it applies a rule that contradicts the governing law; and second, in light of "materially indistinguishable" facts set forth from a decision from the Court, the state court reaches a different conclusion. *Id.* at 406–07, 120 S.Ct. at 1519–20.

■ In this case, the state decision was not "contrary to" any established Supreme Court precedent. There is no definitive law governing whether administrative policies or regulations violate the Ex Post Facto Clause and there is no Supreme Court case which presents materially indistinguishable facts. Therefore, the petition must be denied unless the state court's determination is considered an "unreasonable application" of Supreme Court precedent.

### C. *"Unreasonable Application"*

As a result of the fact that "[t]he term 'unreasonable' is no doubt difficult to define," *id.* at 410, 120 S.Ct. at 1522, this Court acknowledges that the issue concerning the unreasonable application of established federal law as determined by the Supreme Court is a "troublesome" concept. *Francis v. Stone*, 221 F.3d 100, 109 & n. 12 (2d Cir.2000) (illustrating the different contexts in which the term "unreasonable" has been used). However, the Supreme Court has provided guidance and "clarified the standard in two ways." *See Santorelli v. Cowhey*, 124 F.Supp.2d 853, 857 (S.D.N.Y.2000).

■ First, it is clear that in order for habeas relief to be granted, the state must be more than simply incorrect. An unreasonable application does not exist if the state court applied merely erroneous or incorrect federal law; the state court must also have acted "unreasonably" in its application. *Francis*, 221 F.3d at 111 ("Some

increment of incorrectness beyond error is required."). This does not mean that "habeas relief ... [should] be limited to state court decisions 'so far off the mark as to suggest judicial incompetence.' " *Id.* (quoting *Matteo v. Superintendent, SCI Albion,* 171 F.3d 877, 889 (3d Cir.1999) (en banc)). The increment of incorrectness beyond error is slight. *See Francis,* 221 F.3d at 111; *Santorelli,* at 857. Second, the test is based upon an objectively unreasonable standard. *See Williams,* 529 U.S. at 408, 120 S.Ct. at 1521.

### 1. *The State Court Did Not Unreasonably Apply Clearly Established Supreme Court Precedent*

In support of its position, respondent relies upon the fact that both federal and state courts have consistently found that the regulations at issue in this case "are not 'laws' within the meaning of the Ex Post Facto Clause, but guidelines which assist the [Division of Parole] in exercising its discretion in making parole assessments." *Flowers v. Wincelowicz,* No. 96 Civ. 3276, 2000 WL 254011, at *2 (S.D.N.Y. Mar. 6, 2000) (quoting *Johnson,* 685 N.Y.S.2d at 662); *see Matthews v. New York State Div. of Parole,* 714 N.Y.S.2d 118, 119 (2000); *People ex rel. Persing, Jr. v. Lacy,* 714 N.Y.S.2d 143, 144 (2000); *People ex rel. Santoro v. Hollins,* 273 A.D.2d 829, 710 N.Y.S.2d 268, 269 (2000); *People ex rel. Gaito v. Couture,* 269 A.D.2d 709, 704 N.Y.S.2d 894, 894 (2000), *leave denied,* 95 N.Y.2d 754, 711 N.Y.S.2d 156, 733 N.E.2d 228 (2000); *People ex rel. Alsaifullah v. New York State Div. of Parole,* 269 A.D.2d 550, 703 N.Y.S.2d 740, 740 (2000), *leave denied,* 95 N.Y.2d 752, 711 N.Y.S.2d 154, 733 N.E.2d 226 (2000); *People ex rel. Tyler v. Travis,* 269 A.D.2d 636, 702 N.Y.S.2d 705, 706–07 (2000); *People ex rel. Kelly v. New York State Div. of Parole,* 264 A.D.2d 361, 694 N.Y.S.2d 378, 378 (1999); *People ex rel. Newland v. Travis,* 185 Misc.2d 881, 714 N.Y.S.2d 627, 630 (2000). In opposition to these holdings and in support of his position, petitioner cites *People ex rel. Smith v. Greiner,* 176 Misc.2d 931, 674 N.Y.S.2d 588 (1998), the only case which has held that the 1997 Amendments at issue were violative of the Ex Post Facto Clause.

In *Smith,* the petitioner had been convicted of Robbery in the First Degree in 1983 and sentenced to an indeterminate term of imprisonment of eight to sixteen years. *See id.* at 588. He was released from parole in 1992, but in 1997 was subsequently arrested for being in violation thereof. The ALJ followed the guidelines set forth in 1997 Amendments and determined that the petitioner should be reincarcerated until his Maximum Expiration Date, August 18, 1998. *See id.* The court held that the 1997 Amendments were violative of the Ex Post Facto Clause because they were retrospectively applied and disadvantaged the offender. *See Miller,* 482 U.S. at 430, 107 S.Ct. at 2451.

The *Smith* court also based its decision on the Second Circuit's holding in *United States v. Meeks,* 25 F.3d 1117 (2d Cir. 1994). *See Smith,* 674 N.Y.S.2d at 589–90. In *Meeks,* the application of a sentencing statute, which was enacted after the underlying offense was committed and which imposed a mandatory minimum sentence that did not exist at the time of the conviction, was held to be in violation the Ex Post Facto Clause. The *Smith* court rationalized that the case was "practically 'on all fours' " with *Meeks* because the 1997 Amendments imposed a mandatory time assessment of 15 months. *Id.* at 589. It argued that the "previously non-existent 'mandatory minimum' penalty removes discretion and is thus, ... subject to ex post facto rejection." *Id.* at 590. Consequentially, the *Smith* court found the guidelines unconstitutional.

Even if Smith were the only state court precedent, rather than a solitary departure from the prevailing authority, we would not consider it binding, or even persuasive, in determining whether to grant a writ for habeas corpus. "Section 2254(d) requires us to give state courts' opinions a respect-

ful reading, and to listen carefully to their conclusions, but when the state court addresses a legal question, it is the law 'as determined by the Supreme Court of the United States' that prevails.'" *Williams,* 529 U.S. at 387, 120 S.Ct. at 1510. We find that the analysis set forth by *Johnson* is much more compelling. Because the 1997 Amendments do not impose a mandatory minimum sentence, *see infra,* petitioner's reliance on *Smith* is misplaced. Likewise, *Meeks* does not apply to this case, because it dealt with sentencing statutes and not parole guidelines. *See generally Newland,* 714 N.Y.S.2d at 631–32 (holding that the extension of *Meeks* by the *Smith* court was inappropriate).

■ We agree that it is reasonable to interpret the 1997 Amendments as being procedural, rather than affecting matters of substance and therefore as not violative of the Ex Post Facto Clause because they are not laws within the meaning of the Clause. *See Miller,* 482 U.S. at 430, 107 S.Ct. 2446; *see also DiNapoli,* 764 F.2d at 146 (holding that the federal parole guidelines at issue were not "laws" within meaning of Ex Post Facto Clause); *Shepard v. Taylor,* 556 F.2d 648, 654 (2d Cir.1977) (stating in dictum that the federal parole "guidelines do not constitute impermissible ex post facto laws ... they merely clarify the exercise of administrative discretion without altering any existing considerations for parole release."); *Lawary v. United States Parole Comm'n,* No. 99 Civ. 2417, 2000 WL 1277306, at *1 (S.D.N.Y. Sept. 8, 2000).[4] They merely assist the Division in exercising its discretion. As

stated above, the 1997 Amendments do not impose a mandatory minimum time assessment of 15 months, but rather allow the hearing officer either to recommend alternatives to reincarceration or to mitigate the time assessment if the circumstances permit. *See* N.Y. COMP. CODES R. & REGS. tit. 9, § 8005.20(c)(1), (4), (g); *see also Johnson,* 685 N.Y.S.2d at 662.

In this case, the ALJ did not mechanically apply a 15–month time assessment. He requested and received the Division's recommendation to reincarcerate petitioner based upon his long absence and the violent underlying crime. The delay of his decision until the next day, suggests that he did take such recommendation under advisement. Finally, the ALJ set forth the basis for his determination by listing the factors that controlled his decision: (1) the length of petitioner's absconder; (2) petitioner's involuntary return to custody; and (3) the fact that the violation occurred within a short period after parole.

■ Furthermore, we agree that the 1997 Amendments do not necessarily work to the disadvantage of petitioner. "It is axiomatic that for a law to be ex post facto it must be more onerous than the prior law." *Miller,* 482 U.S. at 431, 107 S.Ct. at 2452 (quoting *Dobbert,* 432 U.S. at 294, 97 S.Ct. at 2299). In this case, petitioner could likewise have been reincarcerated for the remainder of the term under the 1990 Guidelines. The 1990 Guidelines expressly gave the presiding offer the right to "direct the violator's reincarceration and fix a date for consideration by the board for rerelease." Therefore, the 1997

---

4. In an action pursuant to 42 U.S.C. § 1983, which alleged the same ex post facto violation at issue in this case, *see Hall v. New York State Div. of Parole,* No. 00 Civ. 0591, slip. op. (S.D.N.Y. Jan. 28, 2000), *aff'd on other grounds,* 2000 WL 1186256, at *1 n. 3 (2d Cir. Aug. 21, 2000), Chief Judge Griesa dismissed the complaint because the plaintiffs did not allege how the amendments altered the definition of the underlying crime or increase the punishments associated therewith; "they simply revise the state's discretionary policy regarding parole determinations." *Id.* at *2–3

(and cases cited therein). On appeal, the Second Circuit held that "the complaint may be read to allege that the amendments imposed a 'mandatory minimum penalty for parole violations,' and 'removed[d] discretion resulting in punishment that did not exist at the time [Hall's parole violation] was committed, but declined to determine whether the allegations were sufficient to plead an ex post facto violation.'" *Hall v. New York State Div. of Parole,* No. 00 Civ. 0053, 2000 WL 1186256, at *1 n. 3 (2d Cir. Aug. 21, 2000).

Amendments, which imposed the revocation of parole and suggested a 15–month time assessment, do not necessarily affect petitioner adversely.

The guidelines at issue do not affect the underlying crime, the prescribed punishment, or the proof necessary to establish petitioner's guilt. *See Miller*, 482 U.S. at 434, 107 S.Ct. at 2454 (citing *Dobbert*, 432 U.S. at 294, 97 S.Ct. at 2298); *see also Portley*, 444 U.S. at 1312, 100 S.Ct. at 715 ("[T]he terms of the sentence originally imposed have no way been altered. Applicant cannot be held in confinement beyond the terms imposed by the judge, and at the time of his sentence he knew that parole violations would put him at risk of serving the balance of his sentence in ... custody."). Petitioner's remaining sentence was greater than 15 months. Therefore, he was not reincarcerated for a time greater than his original sentence.

In conclusion, the time assessment made pursuant to 1997 Amendments was not an unreasonable application of Supreme Court precedent. It is more than reasonable to interpret the 1997 Amendments as being procedural and therefore not "laws" within the meaning of the Ex Post Facto Clause of the United States Constitution. The 1997 Amendments did not necessarily work to the disadvantage of petitioner as he could have been reincarcerated for the remainder of his term pursuant to either 1997 Amendments or the 1990 Guidelines. They do not change the definition of the underlying crime, nor increase the punishment. The petition is therefore denied.

### III. *Denial of Due Process as a Result of Racial Conspiracy*

■ On April 14, 1999, petitioner perfected his appeal of the ALJ's February 10, 1999 time assessment to the Appeals Unit. He alleges that the failure of the Appeals Unit to issue its findings or recommendations within four months of this perfected appeal was a result of a racial conspiracy on the part of the government. Therefore, he claims that he was denied a

fair appeal, which violated his rights of procedural due process. This Court disagrees.

Section 8006.4(c) states that:

Should the appeals unit fail to issue its findings and recommendation within four months of the date that the perfected appeal was received, the appellant may deem this administrative remedy to have been exhausted, and thereupon seek judicial review of the underlying determination from which the appeal was taken. In that circumstance, the division will not raise the doctrine of administrative remedy as a defense to such litigation.

N.Y. Comp. Codes R. & Regs. tit. 9, § 8006.4(c).

■ The exhaustion doctrine which finds its roots in the rule of comity between federal and state courts, prohibits a federal court from granting a state prisoner habeas relief, until the prisoner has exhausted his remedies in state court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842, 119 S.Ct. 1728, 1731, 144 L.Ed.2d 1 (1999); *Cowan v. Artuz*, 96 F.Supp.2d 298, 302–03 (S.D.N.Y.2000) (Conner, J.). It allows state courts the "opportunity to review this claim and provide any necessary relief" and "resolve any constitutional issues." *Cowan*, 96 F.Supp.2d at 302 (quoting *O'Sullivan*, 526 U.S. at 844, 845, 119 S.Ct. at 1732).

The failure of the Appeals Unit to act on his appeal, did not prejudice petitioner in any way. Petitioner subsequently appealed the decision to the New York State Courts. Accordingly, there was no denial of procedural due process.

Finally, petitioner does not allege that the failure of the Appeals Unit to render its findings and recommendations within four months was a result of a racial conspiracy. Indeed, he makes no reference to his race; nor does he allege that he was treated differently from people of another race. The conclusory allegations are insufficient as a matter of law.

## CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is denied. This Court declines to issue a certificate of appealability, as petitioner has not presented a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(2) (Supp.2000); *see United States v. Perez,* 129 F.3d 255, 259–60 (2d Cir.1997), *cert. denied,* 525 U.S. 953, 119 S.Ct. 384, 142 L.Ed.2d 318 (1998).

SO ORDERED.